UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
_____
                                                    )
IN RE:                                              )
                                                    )        Case No's. 05-11708
ONTOS, INC.,                                        )              05-11710
                                                    )
                            Debtor.                 )
_____)

# Appellant Brief
# <u>Of Thomas J. McCoy And T. Mark Morley</u>

**APPEAL OF ORDERS DENYING THE RELIEF REQUESTED IN MORLEY AND MCCOY OBJECTION TO THE MOTION BY THE TRUSTEE FOR APPROVAL OF STIPULATION; DENYING THE RELIEF REQUESTED IN MORLEY AND MCCOY MOTION TO PROCEED AND APPROVING THE MOTION BY THE TRUSTEE FOR APPROVAL OF STIPULATION BY AND BETWEEN THE TRUSTEE AND VENNWORKS, LLC., AMPHION VENTURES, FIRESTAR SOFTWARE, INC., ROBERT J. BERTOLDI, RICHARD C.E. MORGAN AND KENNETH LORD**

<u>Bankruptcy Case</u>
**United States Bankruptcy Court**
**District of Massachusetts**
**Chapter 7**
**Case No. 04-10157**


 <u>Massachusetts State Court Case</u>
**Massachusetts Superior Court**
**Essex County**
**Case No. 02-1161-B**

# Table of Contents

I.   BASIS OF APPELLATE JURISDICTION .......................................................................... 5

II. STATEMENT OF ISSUES PRESENTED AND THE APPLICABLE STANDARD OF
APPELLATE REVIEW .......................................................................................................... 5

    A. STATEMENT OF ISSUES PRESENTED ............................................................................ 5
    B. APPLICABLE STANDARD OF APPELLATE REVIEW ...................................................... 8

III. STATEMENT OF THE CASE .......................................................................................... 9

    A.   NATURE OF THE CASE ............................................................................................. 9
    B.   COURSE OF THE PROCEEDINGS ............................................................................. 10
    C.   DISPOSITION IN THE COURT BELOW ..................................................................... 13

IV. ARGUMENT ..................................................................................................................... 14

    A. THE TRUSTEE'S MOTION AS GRANTED BY THE BANKRUPTCY COURT ATTEMPTS, BY REFERENCE, TO
COMPROMISE CREDITORS' CAUSES OF ACTION ............................................................ 14
        1) Bankruptcy Court Jurisdiction ......................................................................... 15
        2) Non-Debtor Releases.......................................................................................... 18
        3) General Creditor Causes of Action ................................................................... 21
    B SPECIFIC CREDITOR CAUSES OF ACTION. ................................................................. 23
        1. The trustee may not compromise a Creditor Cause of Action for Fraudulent Conveyance arising
under M.GL. 109A................................................................................................... 23
        a.) Types ................................................................................................................ 23
        b.) Discussion in detail ........................................................................................ 23
        c.) Cases cited previously by the Respondent and the Trustee ............................ 32
        2. The trustee cannot compromise a Creditor Cause of Action for Alter Ego which is governed by
Massachusetts law. ................................................................................................. 36
        3. The trustee cannot compromise a Creditor Cause of Action for Breach of Fiduciary duty to the
Creditors.................................................................................................................. 38
        4. The trustee cannot compromise a Creditor Cause of Action for Successor Liability. ..................... 39
        5. The trustee cannot compromise a Creditor Cause of Action for Fraud and Deceit. ....................... 41
        6. Creditor Causes of Action are themselves not Property of the Estate. ............................................. 41

V. CONCLUSION AND RELIEF SOUGHT ......................................................................... 43

    A.   CONCLUSION ......................................................................................................... 43
    B.   RELIEF SOUGHT .................................................................................................... 43

## Cases

Adams v. Coveney (12/4/1998, No. 98-1510)................................................................................. 8

Amazing Enters. v Jobin (In re M & L Business Mach. Co.) (1992, BC DC Colo) 136 BR 271, 22 BCD 881, affd (1993, DC Colo) 160 BR 850.............................................................................. 37

American Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.), 714 F.2d 1266, 1275 (5th Cir. 1983). .......................................................................................... 32

Beacon Wool Corp. v. Johnson, 1954, 331 Mass. 274, 279, 119 N.E.2d 195 ............................. 39

Birbara v. Locke 99 F.3d 1233 (1st cir. 1996)............................................................................. 37

Buchanan v Henderson (1990, DC Nev) 131 BR 859, revd, remanded on other grounds (1993, CA9 Nev) 985 F2d 1021, 93 CDOS 1029. ............................................................................ 36

Campana v. Pilavis (In re Pilavis), 233 B.R. 1 (Bankr. D. Mass. 1999)................................33, 34

Caplin v. Marine Midland Grace Trust Co. of New York 406 U.S. 416,92 S. Ct. 1678, 32 L. Ed. 2d 195 (1972) ...............................................................................................................6, 21, 22

Cargill, Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass. 356, 359 (1997)................................... 40

Celotex Corp. v. Edwards, 514 U.S. 300, 115 S.Ct. 403 (1995) ............................................... 16

Citizens Bank of Massachusetts v. Callahan, 653 N.E.2d 600, 38 Mass.App.Ct. 702 (Mass. App. Ct., 1995) ................................................................................................................................ 31

Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.), 280 F.3d 648, 657-58 (6th Cir. 2002)....................................................................................................................18, 20

Coastal Oil New England, Inc. v. Citizens Fuels Corp., 9 Mass. L. Rptr. 708, 1999 WL 140139 at *6 (Mass.Super.Ct. March 5, 1999), aff'd, 55 Mass.App.Ct. 69, rev. den., 437 Mass. 1106 (2002 ............. 41

Consolidated Rail Corp. v. United States, 896 F.2d 574, 579 (D.C. Cir. 1990).......................... 26

Copperbeech Partnership, Ltd. v. Seegel, 17 Mass. L. Rptr. No. 30, 701 (MA 5/5/2004), 17 Mass. L. Rptr. No. 30, 701 (MA, 2004) ........................................................................................ 42

Daleske, 17 F.3d at 324 ............................................................................................................ 17

Darby v. Cisneros, 509 U.S. 137, 147 (1993)............................................................................ 25

Dixon v. Bennett, 72 Md.App. 620, 531 A.2d 1318, 1326 (1987) .............................................. 31

Evans v. Multicon Construction Corp., 30 Mass App. Ct. 728, 574 NE 2d 395 (1991)............... 37

Feiman, 214 B.R. at 260 (1997................................................................................................... 33

Gillman v. Cont'l Airlines (In re Cont'l Airlines), 203 F.3d 203, 212-13 (3d Cir. 2000) ............ 18

Harff v. Kerkorian, 324 A.2d 215 (Del. Ch., 1974)................................................................... 39

Hartford Underwriters, 530 U.S. at 9 ....................................................................................... 25

Hirsch v. Arthur Andersen & Co., 72 F.3d 1085 (C.A.2 (Conn.), 1995) .................................... 21

Hirsch v. Marinelli (In re Colonial Realty Co.), 168 B.R. 506 (Bankr. D.Conn.1994) ............... 22

In re Adam Furniture Industries, 191 B.R. 249; 1996 Bankr. LEXIS 6; Bankr. L. Rep.(CCH) .................. 36

In re City Communications, Ltd. (1989, BC ND Ga) 105 BR 1018, 21 CBC2d 1052, CCH Bankr L Rptr P 73107................................................................................................................................ 37

In re Clean Car Sys., Inc., 165 B.R. 460 (Bankr. W.D. Mo. 1994) ...................................... 6, 21

In re Colorado Energy Supply, Inc., 728 F.2d 1283, 1286 (10th Cir. 1984.) .............................. 15

In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991)........................................................... 16

In re Ipswich Bituminous Concrete Products, Inc., 79 B.R. 511; 1987 Bankr. LEXIS 1745 ....... 37

In re Jones, 768 F.2d 923 , 927 (7th Cir.1985)......................................................................... 35

In re Midgard Corp., 204 B.R. 764 (Bankr. 10th Cir., 1997) .................................................... 16

In re Morgan-Staley Lumber Co. (1986, BC DC Or) 70 BR 186................................................. 37

In re Parque Forestal, Inc., 949 F.2d 504, 509 (1st Cir. 1991), .................................................. 16

In re Saco Local Dev. Corp., 711F.2d. 441,443-46,8 C.B.C. 2d 1093, 1095-96, (1st cir.1983)..................... 5

In re Santa Clara County Child Care Consortium, 1998 C01 42120 (USCA1, 1998)................... 15

In re Shadduck, 208 B.R. 1 (Bankr.Mass., 1997) ...................................................................... 21

In re Specialty Equip. Cos., 3 F.3d 1043, 1047 (7th Cir. 1993). ................................................ 20

In re: Metreomedia Fiber Network Inc. No. 04-2112-bk (Fed. 2nd Cir. 7/21/2005) (Fed. 2nd Cir., 2005) . 18

J.F.D Enterprises, Inc. 223 B.R. at 610 (1998)........................................................................... 33

Kalb, Voorhis & Co. v American Financial Corp., 8 F.3d 130, 132 (2nd cir.1993)..................... 22

Koch Refining v. Farmers Union Central Exchange, Inc., 831 F.2d 1339, 1348-49 (7th Cir.1987) ........... 22

Kroutik v. Momentix, Inc., No. 012895BLS, 2003 WL 1962486, at 7 (Mass. Super. April 2, 2003).......... 37

Lamie, 124 S. Ct. at 1034 ......................................................................................................... 26

Landsing Diversified Props.-II v. First Nat'l Bank and Trust Co. of Tulsa (In re W. Real Estate Fund, Inc.), 922 F.2d 592, 600-02 (10th Cir. 1990) (per curiam). .................................................................... 19

Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 37 (1998)..................................... 25

MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 93-94 (2d Cir. 1988) 20

Massaro v. Vernitron Corp., 559 F.Supp. 1068 (Mass., 1983).............................................................. 39

McCarthy  v. Litton Industries Inc.410 Mass at 22)............................................................................ 29

Menard-Sanford v. Mabey (In re A.H. Robins Co.), 880 F.2d 694, 701 (4th Cir. 1989) ............................. 20

Milliken & Company v. Duro Textiles, 19 Mass. L. Rptr. No. 22, 509 (MA 6/14/2005), 19 Mass. L. Rptr. No. 22, 509 (MA, 2005) .................................................................................................................... 40

Mixon v. Anderson, (In re Ozark Restaurant Equipment Co. Inc.) 816 F 2d. 1222, 16 C.B.C 2d 1148 (8th cir. 1987) cert. denied 484 U.S. 848 (1987) ...................................................................................... 6, 21

My Bread Baking Co. v.. Cumberland Farms, Inc., 353 Mass. 614, 620, 233 N.E. 2d 748 (1968) ............ 37

Nat'l Tax Credit Partners, L.P. v. Havlik, 20 F3d 705, 708-9 (7th Cir. 1994). ...................................... 32

New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.), 351 F.3d 86, 92 (2d Cir. 2003).............................................................................................. 19

Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.) 226 F3d 237, 242 (3d Cir. 2000.......................................................................................................... 34

Pacor Inc. v. Higgins 743 F. 2d 984 (C.A. 3 (Pa.), 1984 ..................................................................... 16

Palmacci v. Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997) .................................................................... 8

Patterson v. Shumate, 504 U.S. 753, 760 (1992).................................................................................. 25

Regan  v. Vinick and Young (In re  Rare Coin Galleries  of Am. Inc.) 862 F2d. 896 (1st Cir. 1988), 501 ... 6, 21

Reisman v. KPMG Peat Marwick LLP, 57 Mass.App.Ct. 100, 109 (2003).................................................. 42

Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss), F.3d 1394, 1401-02, 1402 n.6 (9th Cir. 1995)..... 19

Rubin v. United States, 449 U.S. 424, 429- 30 (1981) .......................................................................... 25

SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 960 F.2d 285, 293 (2d Cir. 1992). ...................................................................................................................... 18

Sherman Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991)...................................... 6, 21

St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688 (2d Cir.1989) ........................................ 22

Steinberg v. Buczynski, 40 F.3d 890, 893 (7th Cir.1994) .................................................................... 22

Union Bank v. Wolas, 502 U.S. 151, 158 (1991) ............................................................................... 24

United States v. Granderson, 511 U.S. 39, 68 (1994).......................................................................... 26

United States v. James, 478 U.S. 597, 604 (1986) ............................................................................. 26

Williams v. California  1st Bank, 859 F.2d 664, (9th Cir.1988).......................................................... 6, 21

# I.    Basis of Appellate Jurisdiction

The Federal District Court for Massachusetts has jurisdiction to hear an appeal from a final order of the bankruptcy court of Massachusetts ("Bankruptcy Court") pursuant to 28 U.S.C. § 158(a)(1). The Bankruptcy Court's approval of the Motion by the Trustee for Approval of Stipulation ("Trustee's Motion") and ("Stipulation") releasing solvent non-debtor third parties, together with the denial of the Morley and McCoy ("Appellants") Objection to the Trustee's Motion ("Appellants' Objection") and Morley and McCoy Motion to Proceed ("Appellants' Motion") against the solvent non-debtor third parties, are final orders. In re Saco Local Dev. Corp., 711F.2d. 441,443-46,8 C.B.C. 2d 1093, 1095-96, (1st cir.1983) ("… we conclude that a "final judgement, order, or decree" under 28 U.S.C. section 1293(b) includes an order that conclusively  determines a separable dispute over a creditor's claim or priority.")

# II. Statement of Issues presented and the Applicable Standard of Appellate Review

## A. Statement of Issues Presented

At its core, the Trustee's Motion is manifestly incorrect in that it attempts to compromise putative debtor causes of action ("Debtor Causes of Action") together with rights and powers granted the trustee ("Trustee Power(s)") under 11 U.S.C. §544.  It also attempts to compromise and release, by reference, what are numerous creditor causes of action ("Creditor Causes of Action").  Caplin v. Marine Midland Grace Trust Co. of New York 406 U.S. 416,92 S. Ct. 1678, 32 L. Ed. 2d 195 (1972) (since the trustee may not assert creditors' claims against third parties for the benefit of particular creditors, trustee

has no standing to assert bondholders' claims on their behalf); Sherman Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991) ("It is well established that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." (citing Caplin)); Williams v. California 1st Bank, 859 F.2d 664, 19 C.B.C. 2d 922 (9th Cir.1988) (claims assigned to the trustee may not be asserted for the benefit of the assigning creditors); Mixon v. Anderson, (In re Ozark Restaurant Equipment Co. Inc.) 816 F 2d. 1222, 16 C.B.C 2d 1148 (8th cir. 1987) cert. denied 484 U.S. 848 (1987); In re Clean Car Sys., Inc., 165 B.R. 460 (Bankr. W.D. Mo. 1994), Regan v. Vinick and Young (In re Rare Coin Galleries of Am. Inc.) 862 F2d. 896 (1st Cir. 1988), 1988 U.S. App. LEXIS 16096, Bankr. L. Rep. (CCH) P 72, 501 ("The trustee has no power to assert any claim on behalf of the creditors when the cause of action belongs solely to them.") at 900.

The Trustee's Motion fails to properly delineate between the various Debtor Causes of Action, Trustee Powers and Creditor Causes of Action and seeks to release solvent non-debtor third parties from Creditor Causes of Action.

The Bankruptcy Court's blithe statement, "Indeed, consistent with the whole bankruptcy concept, which is to take all of the goodies and divide them equitably between everybody, and nobody gets an individual piece of the action, ...." *(Transcript of June 29, 2005 Hearing, at 18)* indicates a willingness to dispossess the Appellants of their individual rights without engaging in the more detailed analysis that the law requires.

The following chart illustrates the type of detailed analysis that is required

**Class I**

Debtor Cause of Action against solvent non-debtor third parties

- Subject to disposition by the Bankruptcy Court

**Class II**

Joint Debtor/Creditor Cause of Action against solvent non-debtor third parties
- Subject to the Automatic Stay
- Subject to disposition by the Bankruptcy Court

**Class III**

Power of the Trustee against solvent non-debtor third parties
- Subject to disposition by the Bankruptcy Court

**Class IV**

Creditor Cause of Action against  a corporate debtor
- Subject to the 11 U.S.C. §363 automatic stay ("Automatic Stay")
- Subject to partial disposition by the Bankruptcy Court but may not be discharged

**Class V**

Solely Creditor Cause of Action against solvent non-debtor third parties
That seeks property of the estate
- Subject to the Automatic Stay
- Absent creditor agreement, <u>not subject to disposition by the Bankruptcy Court</u>

**Class VI**

Creditor Cause if Action against solvent non-debtor third parties
That does not seek property of the estate
- Not subject to the Automatic Stay
- Absent creditor agreement, <u>not subject to disposition by the Bankruptcy Court</u>

Using the classification system on the previous page the Appellant's state court claims as filed and as will be filed  involving Creditor Causes of Action together with the Trustee's Power should be classified as:

**Class I**
**Class II**
**Class III**
- Fraudulent Conveyance power stated in 11 U.S.C. 554

**Class IV**
- Breach of Contract
- Breach of Good Faith

**Class V**
- Fraudulent Conveyance <u>arising under</u> M.G.L. chapter 109A
- Alter Ego arising under Massachusetts Law
- Breach of Fiduciary Duty to the Creditors arising under Delaware law
- Successor Liability arising under Massachusetts law
- Fraud and Deceit –non Wage Act related

**Class VI**
- Massachusetts Wage Act ("Wage Act")
- Fraud and Deceit-Wage Act related


**B. Applicable Standard of Appellate Review**

This court should review the Bankruptcy court's legal conclusions de novo and defer to its factual findings only when they are not clearly erroneous. <u>Adams v. Coveney</u> (12/4/1998, No. 98-1510)  ("We review the bankruptcy court's ruling de novo, deferring to its factual findings unless they are clearly erroneous. See 28 U.S.C. § 158(d). We consider the district court's reasoning where it is persuasive, but otherwise accord no "special deference" to the court's analysis. *See also,* <u>Palmacci v. Umpierrez</u>, 121 F.3d 781, 785 (1st Cir. 1997).")

## III. Statement of the Case

### A.  Nature of the Case

The case involves the continuation of a Massachusetts state court case filed against Ontos, Inc. ("Debtor") and the solvent non-debtor third parties, VennWorks, LLC., Amphion Ventures, Firestar Software, Inc., Robert J. Bertoldi, Richard C. E. Morgan, and Kenneth Lord. ("VennWorks Group") who owned and controlled the Debtor.  In the state action, Appellants asserted claims for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Violation of the Massachusetts Wage Act M.G.L. c. 149, Fraudulent Conveyance, Fraud and Deceit, and Alter Ego liability.

The solvent non-debtor third parties had stripped the Debtor of all assets by selling the assets to themselves via a newly formed sister corporation Firestar Software ("Firestar") and then using the remaining cash to pay such debts as they saw fit. The Appellants pursued the Debtor and the solvent non-debtor third parties in state court. After one and one-half years of litigation in state court, the Debtor filed Chapter 7 bankruptcy. Within months after acquiring the Debtor's assets, Firestar and the solvent non-debtor third parties represented the value of Firestar to potential outside investors as exceeding $11 million of dollars. The solvent non-debtor third parties have in the Stipulation proposed to pay $50,000 to the estate to purchase a release from suit by the estate and the Appellants'. The Appellants contest the Bankruptcy Court's jurisdiction to determine a "related to" case, the Bankruptcy Court's authority to approve the release of these non-debtor third parties, and further contest  the Bankruptcy Court's authority to approve a release of general creditor causes of action. The Appellants have not approved,

and will not approve, this release and appeal the Bankruptcy Court's order approving the release of solvent non-debtor third parties from direct Creditor Causes of Action owned solely by the Appellants.

**B.  Course of the Proceedings**

In June 2002, Appellants commenced an action in Essex Superior Court which alleged causes of action for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Violation of the Massachusetts Wage Act M.G.L. c. 149, Fraudulent Conveyance, Fraud and Deceit, and Corporate Alter Ego theories against Ontos, Inc., VennWorks, LLC, Amphion Capital management, LLC, Firestar Software, Inc., Robert J. Bertoldi, Richard C. E. Morgan, and Kenneth Lord.  For over one and one half years, the parties engaged in extensive discovery, exchanging thousands of documents and countless communications.  Despite being insolvent since 2002, Ontos, Inc. waited until January 8, 2004, to file a voluntary petition ("Petition") seeking relief under Chapter 7 of the United States Bankruptcy code (11 U.S.C § 101 et seq.) ("Bankruptcy Code"), only hours short of a court-sanctioned discovery deadline imposed by a Master. The state court action was essentially stayed following the Chapter 7 filing by the Debtor, but Appellants nevertheless sought to proceed against the remaining non-debtor third party defendants, the VennWorks Group and petitioned the court to make such an allowance and issue an Order in respect to the claims related to the Wage Act.  The Court issued a ruling authorizing the Appellants to proceed.

Ten months into the bankruptcy proceedings, in October 2004, with virtually no communications in months from the parties and after seeing that the Chapter 7 Trustee Joseph G. Butler (the "Trustee") was not interested in pursuing discovery or otherwise

bringing an action on behalf of the Debtor for the serious and injurious acts by the VennWorks Group, counsel for the Appellants contacted the Trustee and communicated a verbal offer ("First Offer") to purchase certain assets of the estate. Counsel for the Appellants followed up with several phone calls that were unreturned by the Trustee. Finally, after repeatedly being rebuffed, on December 3, 2004, counsel for the Appellants communicated an offer to the Trustee in writing. The offer requested a counter-offer in the event that it was not acceptable to the Trustee. Nearly eight weeks later, by letter dated January 25, 2005, the Trustee deigned to respond, rejected the offer and made no counteroffer.

Following the Trustee's response, counsel for the Appellants communicated a second verbal offer to the Trustee. They again followed up with several phone calls which were not returned. Counsel for the Appellants then made the Second Offer in writing, once again requesting a counter offer in the event that the Second Offer was not acceptable to the Trustee. The Trustee rejected the second Offer and did not make a counteroffer, but provided guidance regarding how the Appellants could improve their offer so that it would be accepted.

After the rejection of the second Offer, counsel for the Appellants communicated verbally to the Trustee that they intended to improve their offer as suggested by him. Just a week or so later, while the Appellants were putting together an improved offer, the Trustee, on March 11, 2005, filed the Trustee's Motion. The Trustee did not provide any prior notice to the Appellants, or their counsel, and has failed to explain why he would file such a motion after having been given notice of an imminent offer along the very lines that he suggested. Moreover, no details or notice were provided regarding the

negotiations with the VennWorks Group that resulted in the surprisingly low offer of $50,000.00, and the Appellants had no opportunity to present a counter-offer despite repeated encouragement from the Trustee.

On April 22, 2005, the Trustee communicated by email to T. Mark Morley,("Morley") one of the Appellants, his refusal to seek relief under M.G.L. c. 151A § 20(a) in respect to the roof of claim filed by the Massachusetts Department of Education and Transportation ("DET") and his refusal to extend the time for objection to the Trustee's Motion. On April 27, 2005, the Appellants filed their Emergency Objection To Claim, Motion To Compel, And To Extend The Time For Objection.

On May 2, 2005, the court continued the matter until May 7, 2005 and requested counsel and the trustee to communicate with the DET.

On May 9, counsel for the DET appeared and indicating that the DET was amending its claim from $439,583.86 to $23.25, and the court extended the time for filing an objection to the Trustee's Motion for two weeks.

On May 24, 2005 the Appellants' Objection was filed. At approximately the same time, the Appellants' Motion was filed

.      On June 20, 2005 a Trustee's Objection to Motion by Morley and McCoy For Order Authorizing them to Proceed against Solvent Co-defendants and Response to Objection to the Motion by the Trustee for Approval of Stipulation was filed by the Trustee. Approximately at the same time, a Response to Morley and McCoy's Objection to the Motion by the Trustee for Approval of Stipulation and Opposition to Motion for Leave to Pursue Claims was filed by the VennWorks Group

On June 29, 2005, after a hearing, Judge Hillman after a hearing entered Orders denying Appellants' Objection and Motion and granting the Trustee's Motion.

Appellant Morley filed a Motion for Stay of the Orders ("Stay Motion") entered on June 29, 2005 pending this Appeal. This Stay Motion was denied on August 11, 2005.

**C.  Disposition in the Court Below**

On March 11, 2005, filed the Trustee's Motion was filed.

On May 24, 2005 the Appellants' Objection was filed. At approximately the same time, the Appellants' Motion was filed

.     On June 20, 2005 a Trustee's Objection to Motion by Morley and McCoy For Order Authorizing them to Proceed against Solvent Co-defendants and Response to Objection to the Motion by the Trustee for Approval of Stipulation was filed by the Trustee. Approximately at the same time, a Response to Morley and McCoy's Objection to the Motion by the Trustee for Approval of Stipulation and Opposition to Motion for Leave to Pursue Claims was filed by  the VennWorks Group

On June 29, 2005 Judge Hillman after a hearing entered Orders denying Appellants' Objection and Motion and granting the Trustee's Motion .

Appellant Morley filed a Motion for Stay of the Orders ("Stay Motion") entered on June 29, 2005 pending this Appeal. This Stay Motion was denied on August 11, 2005.

## IV. Argument

**A. The Trustee's Motion as granted by the Bankruptcy Court attempts, by reference, to compromise Creditors' Causes of Action**

In the Stipulation, the Trustee has fashioned the following release language:

"The Trustee, in consideration of, *inter alia*, (i) the $50,000.00 to be paid by Firestar, VennWorks, Amphion, Morgan, Bertoldi and Lord and (ii) Firestar, VennWorks, Amphion, Morgan, Bertoldi and Lord's waiver and/or release of any right to any distribution from the Trustee of the estate on any claim which any of them may have against the Debtor or the Chapter 7 estate, the Trustee, on his own behalf and on behalf of the Debtor's estate, waives and/or releases any and all claims that the Debtor or the Debtor's estate may have against Firestar, VennWorks, Amphion, Morgan, Bertoldi and Lord arising out of or related to the conveyance by the Debtor of its ObjectSpark division to Firestar and any and all claims that the Debtor or the Debtor's estate may have against Firestar, VennWorks, Amphion, Morgan, Bertoldi and Lord arising out of or related to any claim that Firestar, VennWorks, Amphion, Morgan, Bertoldi and Lord used the corporate form of Ontos for fraudulent purposes, intermingled Ontos' corporate activities and interests with their own personal activities and interests such that there was no legal distinction between them, and that Firestar, VennWorks, Amphion, Morgan, Bertoldi or Lord are liable for the obligations of Ontos on any "alter ego", "piercing the corporate veil" or similar theory, including specifically, but not limited to, the claims set forth in Counts IV and VI of the complaint filed by Morley and McCoy which commenced the State Court Action.". *Trustee Trustee's Motion*, para. 3 at pages 5 and 6.

The Stipulation in general and the release language in particular contain a number of infirmities.

# 1) Bankruptcy Court Jurisdiction

The release language would seek to adjudicate the state law Creditor Causes of Action referenced therein and indicate that the Trustee's Motion as granted by the Bankruptcy Court may make a final determination of the outcome of those certain state law claims – it may not. Further, the creditors have not consented to jurisdiction of the Bankruptcy Court in respect to their Creditor Causes of Action in the state court and while the Bankruptcy Court under the Bankruptcy Code may stay these Creditor Causes of Action, absent jurisdictional authority, it may not adjudicate them. (28 USCS § 157 provides as follows;

 "(b) (1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title" and further  "  (2) Core proceedings include, but are not limited to……(H) proceedings to determine, avoid, or recover fraudulent conveyances...

The Creditor Causes of Action discussed herein, do not "arise under title 11" nor do they "arise in". In re Santa Clara County Child Care Consortium, 1998 C01 42120 (USCA1, 1998) (The type of civil proceedings encompassed within § 1334(b) as "related to proceedings" are those whose outcome could conceivably have an effect on the bankruptcy estate, and which (1) involve causes of action owned by the debtor that became property of a title 11 estate under § 541, or (2) are suits between third parties which "in the absence of bankruptcy, could have been brought in a district court or a state court." 1 Lawrence P. King, et al., Collier on Bankruptcy ¶ 3.01[29][c][ii] (15th ed. rev. 1998), citing In re Colorado Energy Supply, Inc., 728 F.2d 1283, 1286 (10th Cir. 1984.)

Not all litigation between third parties falls within the court's "related to" jurisdiction. The test most widely used to determine whether litigation falls within the jurisdictional grant of § 1334(b) is whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Collier, ¶3.01[30][c][ii] at 3-24, citing <u>Pacor Inc. v. Higgins</u> 743 F. 2d 984 (C.A. 3 (Pa.), 1984 The First Circuit has recognized the Pacor test <u>In re Parque Forestal, Inc.,</u> 949 F.2d 504, 509 (1st Cir. 1991), and <u>In re G.S.F. Corp</u>., 938 F.2d 1467, 1475 (1st Cir. 1991). Further, the Pacor test has been frequently applied by district and bankruptcy courts within the First Circuit. ). <u>In re Midgard Corp.,</u> 204 B.R. 764 (Bankr. 10th Cir., 1997) ( A bankruptcy judge may also hear a proceeding that is not a core proceeding but that is otherwise "related to" a case under title 11. In such a proceeding, however, the bankruptcy judge is required to "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be determined by the district judge...." 28 U.S.C. § 157(c)(1). However, parties may consent to a bankruptcy judge entering judgment in a non-core, "related to" case. Id. at § 157(c)(2).) See also the dissent, <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (aff'd on other grounds.) (In my view, the distinction between the jurisdiction to "hear and determine" core proceedings on the one hand and the jurisdiction only to "hear" related proceedings on the other hand is critical, if not dispositive. I believe that the jurisdiction to hear (and yet not to determine) a case under § 157(c)(1) provides insufficient jurisdiction to a bankruptcy judge to permit him to issue a binding injunction that prevents an Article III court from exercising its conceded jurisdiction over the case. The unambiguous text of § 157(c)(1) requires that

the bankruptcy judge's participation in related proceedings be merely advisory rather than adjudicative.)

Further, assuming *aguendo,* that the bankruptcy court had somehow gained jurisdiction then it should have remanded or abstained. <u>Midgard</u> *Id.* (Regardless of whether the State Court action is a "related to" proceeding or a proceeding over which the Bankruptcy Court has no jurisdiction, however, the Bankruptcy Court erred in refusing to remand it to State Court. If it lacked jurisdiction, the Bankruptcy Court was required as a matter of law to remand the State Court action because removal under 28 U.S.C. § 1452(a) is contingent on jurisdiction under 28 U.S.C. § 1334. 28 U.S.C. §§ 1447(c) & 1452; <u>Daleske</u>, 17 F.3d at 324 (section 1447(c) requires remand of removed actions where bankruptcy court jurisdiction is lacking). If, on the other hand, the Bankruptcy Court had jurisdiction over the State Court action as a proceeding "related to" the Debtor's bankruptcy case, it also should have remanded the action to State Court because, as discussed in greater detail below, the Bankruptcy Court was required to abstain from hearing the action under 28 U.S.C. § 1334(c)(2)).

Three of the Creditor Causes of Action which The Trustee's Motion attempts by reference to compromise have been the subject of a state court suit for over one and one-half years prior to the bankruptcy filing. Further, at the time of the bankruptcy filing, the Appellants' were considering amending their state court claim to include the remaining two Creditor Causes of Action. These issues are "related to" issues and no action has been taken to bring these state court issues within the jurisdiction of the Bankruptcy Court. Accordingly the Bankruptcy Court may not make a final determination on these issues.

## 2) Non-Debtor Releases

Also, assuming *aguendo,* that the Bankruptcy Court had somehow gained jurisdiction, the court cannot release Firestar, VennWorks, Amphion, Morgan, Bertoldi and Lord from any and all claims relating to each ones' involvement or relationship with Ontos, including third party claims against the solvent co-defendants – such an act would be much too broad. Instead, the Trustee represents the Debtor and the Debtor's estate, and, accordingly, is permitted to execute a release only on behalf of the Debtor and the estate – not one foreclosing third parties from pursuing non-Debtor third parties.

Non-debtor releases have stringent requirements.  In re: Metreomedia Fiber Network Inc. No. 04-2112-bk (Fed. 2nd Cir. 7/21/2005) (Fed. 2nd Cir., 2005) ("We have previously held that "[i]n bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan." SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 960 F.2d 285, 293 (2d Cir. 1992). While none of our cases explains when a nondebtor release is "important" to a debtor's plan, it is clear that such a release is proper only in rare cases. See, e.g., Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.), 280 F.3d 648, 657-58 (6th Cir. 2002) ("[S]uch an injunction is a dramatic measure to be used cautiously . . . ."): Gillman v. Cont'l Airlines (In re Cont'l Airlines), 203 F.3d 203, 212-13 (3d Cir. 2000) (recognizing that nondebtor releases have been approved only in "extraordinary cases"). The Ninth and Tenth Circuits have held that nondebtor releases are prohibited by the Bankruptcy Code, except in the asbestos context. See Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss), F.3d 1394, 1401-02, 1402 n.6

(9th Cir. 1995); Landsing Diversified Props.-II v. First Nat'l Bank and Trust Co. of Tulsa (In re W. Real Estate Fund, Inc.), 922 F.2d 592, 600-02 (10th Cir. 1990) (per curiam). At least two considerations justify the reluctance to approve non-debtor releases. First, the only explicit authorization in the Bankruptcy Code for non-debtor releases is 11 U.S.C. § 524(g), which authorizes releases in asbestos cases when specified conditions are satisfied, including the creation of a trust to satisfy future claims. Cont'l Airlines supra; see also Dow Corning, Id.("The Bankruptcy Code does not explicitly prohibit or authorize a bankruptcy court to enjoin a non-consenting creditor's claims against a non-debtor to facilitate a reorganization plan."). True, 11 U.S.C. § 105(a) authorizes the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]"; but section 105(a) does not allow the bankruptcy court "to create substantive rights that are otherwise unavailable under applicable law." New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.), 351 F.3d 86, 92 (2d Cir. 2003) (quotations and citation omitted). Any "power that a judge enjoys under § 105 must derive ultimately from some other provision of the Bankruptcy Code." Douglas G. Baird, Elements of Bankruptcy 6 (3d ed. 2001); accord Dairy Mart, 351 F.3d at 92 ("Because no provision of the Bankruptcy Code may be successfully invoked in this case, section 105(a) affords [appellant] no independent relief."). Second, a non-debtor release is a device that lends itself to abuse. By it, a non-debtor can shield itself from liability to third parties. In form, it is a release; in effect, it may operate as a bankruptcy discharge arranged without a filing and without the safeguards of the Bankruptcy Code. The potential for abuse is

heightened when releases afford blanket immunity. Here, the releases protect against any claims relating to the debtor, "whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured."

Courts have approved nondebtor releases when: the estate received substantial consideration, e.g., Drexel Burnham, 960 F.2d at 293; the enjoined claims were "channeled" to a settlement fund rather than extinguished, MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 93-94 (2d Cir. 1988); Menard-Sanford v. Mabey (In re A.H. Robins Co.), 880 F.2d 694, 701 (4th Cir. 1989); the enjoined claims would indirectly impact the debtor's reorganization "by way of indemnity or contribution," id.; and the plan otherwise provided for the full payment of the enjoined claims, id. Nondebtor releases may also be tolerated if the affected creditors consent. See In re Specialty Equip. Cos., 3 F.3d 1043, 1047 (7th Cir. 1993). But this is not a matter of factors and prongs. **No case has tolerated nondebtor releases absent the finding of circumstances that may be characterized as unique.** *See* Dow Corning, at 658; *accord* Cont'l Airlines, 203 F.3d 212-13)

### 3) General Creditor Causes of Action

The Trustee contends that the he is the appropriate party to pursue causes of action which are "general" to all the creditors rather than "personal". He is wrong. (The Trustee, however, has no power to assert any claim on behalf of the creditors when the cause of action belongs solely to them.)  Caplin *Id*; Ozark *Id*.; 4 Collier on Bankruptcy § 541.10[8], at 541-70.). In re Shadduck, 208 B.R. 1 (Bankr.Mass., 1997) (This case presents the question whether a trustee in bankruptcy can prosecute allowed and nondischargeable claims of creditors for the purpose of collecting the claims from retirement benefits which are not part of the bankruptcy estate. Recognizing a division in the case law on a trustee's ability to enforce claims held by the general creditor body, I hold the trustee cannot do so.). Sherman Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991) ("It is well established that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." (citing Caplin)); Williams v. California 1st Bank, 859 F.2d 664, 19 C.B.C. 2d 922 (9th Cir.1988) (claims assigned to the trustee may not be asserted for the benefit of the assigning creditors); Mixon v. Anderson, (In re Ozark Restaurant Equipment Co. Inc.) 816 F 2d. 1222, 16 C.B.C 2d 1148 (8th cir. 1987) cert. denied 484 U.S. 848 (1987); In re Clean Car Sys., Inc., 165 B.R. 460 (Bankr. W.D. Mo. 1994); Hirsch v. Arthur Andersen & Co., 72 F.3d 1085 (C.A.2 (Conn.), 1995); Regan  v. Vinick and Young (In re  Rare Coin Galleries  of Am. Inc.) 862 F2d. 896 (1st Cir. 1988), 1988 U.S. App. LEXIS 16096, Bankr. L. Rep. (CCH) P 72, 501 ("The trustee

has no power to assert any claim on behalf of the creditors when the cause of action

belongs solely to them.") at 900.

Further, as footnote 3 in <u>Shadduck</u> *Id*. Points out ("It is significant, furthermore,

that Congress decided against adopting a proposed subsection of § 544 which would have

expressly given a trustee the limited right to assert creditors' claims. With that signal from

Congress, it is unwarranted to read into § 544(a) the grant of an implied power to bring a

creditors' cause of action.").   <u>Shadduck</u> *Id* at 6 continues ("Some decisions, however,

permit a trustee to prosecute claims of creditors if the claims are held by all creditors

rather than just some, distinguishing <u>Caplin</u> on this point. <u>See, e.g.</u>, Koch Refining v.

Farmers Union Central Exchange, Inc., 831 F.2d 1339, 1348-49 (7th Cir.1987); <u>St. Paul</u>

<u>Fire & Marine Ins. Co. v. PepsiCo, Inc.,</u> 884 F.2d 688 (2d Cir.1989); <u>Kalb, Voorhis &</u>

<u>Co. v American Financial Corp.,</u> 8 F.3d 130, 132 (2nd cir.1993). <u>See also</u>, <u>Hirsch v.</u>

<u>Marinelli (In re Colonial Realty Co.),</u> 168 B.R. 506 (Bankr. D.Conn.1994) (trustee denied

ability to prosecute statutory avoidance rights of single creditor only). I am unable to

draw this distinction. A trustee's difficulty in these cases is lack of statutory authority to

bring any creditor claim, whether the claim is held by some or all creditors. Apparently

for this reason later decisions in their circuits cast doubt on the continued vitality of <u>Koch</u>

and <u>St. Paul Fire.</u> See <u>Steinberg v. Buczynski</u>, 40 F.3d 890, 893 (7th Cir.1994) (stating

<u>Koch's</u> distinction between "general" and "personal" claims "is not an illuminating

usage");<u>Shearson Lehman Hutton, Inc. v. Wagoner</u>, 944 F.2d 114, 118-20 (2d Cir.1991)

(relying on <u>Caplin</u> in denying trustee standing to assert dissipation claims of creditors).

The trustee may not rely on any theory of "general" creditor causes of action to

usurp the Appellants' rights in the state court suit.

**B Specific Creditor Causes of Action**

## 1. The trustee may not compromise a Creditor Cause of Action for Fraudulent Conveyance arising under M.GL. 109A

**a.) Types**

The three types of fraudulent conveyance causes of action that may be encountered in a Massachusetts bankruptcy are:

1) The Trustee's Cause of Action under §548, which is the Trustee's power to avoid. In this case the bankruptcy was filed over one after the transfer and therefore this remedy is no longer available to the trustee..

2) The Trustee's Cause of Action under §544 where the trustee is given the power to avoid a transfer if under state law a creditor could have brought a case for Fraudulent Transfer. The trustee does not succeed to the Creditor's cause of Action but in fact is given a new and independent Cause of Action using the Creditor's Cause of Action as a test to see if the Trustee's cause of Action will arise

3) The Creditors Cause of Action (both intentional and constructive) under M.G.L. c. 109A . The Uniform Fraudulent Conveyances act as adopted in Massachusetts authorizes creditors to seek avoidance of a fraudulent transfer or obligation.

**b.) Discussion in detail**

1) **Creditors only** Massachusetts Law by statute invest <u>only</u> the creditors with a cause of action for Fraudulent Conveyance. In an action for relief against a transfer or obligation under this chapter, *a creditor*, subject to the limitations in section nine, may obtain….avoidance of the transfer or obligation to the extent necessary to satisfy the

creditor's claims…") <u>See</u> M.G.L. c. 109A section 8 et seq.; M.G.L. c. 109A sections

8(a)(1). There is no ability for a Debtor to use this statute.

2) **Trustee's Power.** Section 544 of the Bankruptcy Code invests the Trustee with

a separate, new and independent Power to pursue a Fraudulent Conveyance.

> § 544(b)(1) Except as provided in paragraph (2), the trustee may avoid any
> transfer of an interest of the debtor in property or any obligation incurred
> by the debtor that is voidable under applicable law by a creditor holding
> an unsecured claim that is allowable under § 502 of this title or that is not
> allowable only under § 502(e) of this title.

3) **Golden Creditor.** The Creditor's Cause of Action is used as a test to see if the

Trustee's Power will arise. *Id.* Without the hypothetical "golden creditor", the trustee is

without any power under § 544(b)(1)

4) **No assignment.** Section 544 (b)(1) does not assign the Creditors Cause of

Action to the Trustee. There are no words of "assignment" in § 544(b)(1). *Id*   See Union

Bank v. Wolas, 502 U.S. 151, 158 (1991) ("The fact that Congress may not have foreseen

all of the consequences of a statutory enactment is not a sufficient reason for refusing to

give effect to its plain meaning."); The Trustee plainly does not prosecute the Creditor's

Cause of Action but rather exercises the power given to the Trustee under § 544(b)(1).

5) **No merger.** Section 544 (b)(1) does not merge the Creditors Cause of Action

with the Trustee's Cause of Action. There are no words of "merger" in § 544(b)(1). *Id.*

6) **Plain language of the statute**. Section 544 (b)(1) provides

§ 544(b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under § 502 of this title or that is not allowable only under § 502(e) of this title.

The statute is clearly stated and the Appellants are bound and *have the protection of the statute.*

   As stated in paragraphs 5 and 6 above, there are no words of "assignment" or "merger" in the statute.  When a sentence is subject to a clear reading, the Bankruptcy Court is prohibited from construing an assignment or merger of actions. ("Yet policy, pre-Code practice, and such other tools of construction are to be relied upon only when, ultimately, the meaning of a provision is not plain. When, however, we can arrive at a natural reading of a Code provision, informed not only by the language of the provision itself but also by its context, the burden to persuade us to adopt a different reading is "exception ally heavy." ) (Hartford Underwriters, 530 U.S. at 9 *(quoting* Patterson v. Shumate, 504 U.S. 753, 760 (1992)*)*. Further, the Supreme Court has repeatedly explained that recourse to legislative history or underlying legislative intent is unnecessary when a statute's text is clear and does not lead to an absurd result. See, e.g., Darby v. Cisneros, 509 U.S. 137, 147 (1993) ("Recourse to the legislative history of [a provision of the APA] is unnecessary in light of the plain meaning of the statutory text."); Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 37 (1998) ("The language is straightforward, and with a straightforward application ready to hand, statutory interpretation has no business getting metaphysical."); Rubin v. United States, 449 U.S. 424, 429- 30 (1981) ("We begin by looking to the language of the Act. . . .

When we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances." (internal quotations omitted)). The Court has instructed us to begin with a statute's text when discerning its meaning, and to "assume that the legislative purpose is expressed by the ordinary meaning of the words used." United States v. James, 478 U.S. 597, 604 (1986) (internal quotation omitted). The Supreme Court reminded us in the Term just ended that " `[i]t is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result.' " Lamie, 124 S. Ct. at 1034 (quoting United States v. Granderson, 511 U.S. 39, 68 (1994) (Kennedy, J., concurring)) (ellipsis in Lamie); Consolidated Rail Corp. v. United States, 896 F.2d 574, 579 (D.C. Cir. 1990) (courts are generally not "free to `correct' what they believe to be congressional oversights by construing unambiguous statutes to the contrary of their plain meaning").

 7) **Creditor's Remedies.** The Creditor's Remedies under Massachusetts law are much broader than the trustee's. The trustee's remedies as stated in §544(b)(1) are limited to  "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under § 502 of this title or that is not allowable only under § 502(e) of this title" and under §550 the trustee  may recover "if the court so orders" "the value of the property".

The creditors right to recover the value of the property under M.G. L. 109A §8 is

absolute and is not dependent on the discretion of the court.

("  M.G. L. 109A §8. Creditor's Remedies.
 (a) In an action for relief against a transfer or obligation under this chapter, a
creditor, subject to the limitations in section nine, may obtain:
 (1) avoidance of the transfer or obligation to the extent necessary to satisfy the
creditor's claim;
 (2) an attachment or other provisional remedy against the asset transferred or
other property of the transferee in accordance with the applicable procedure set forth in
chapter two hundred and fourteen for actions to reach and apply chapter two hundred and
twenty-three for attachments, and chapter two hundred and forty-six for trustee process
and in accordance with applicable rules of civil procedure;
 (3) subject to applicable principles of equity and in accordance with applicable
rules of civil procedure, (i) an injunction against further disposition by the debtor or a
transferee, or both, of the asset transferred or of other property; (ii) appointment of a
receiver to take charge of the asset transferred or of other property of the transferee;
or (iii) any other relief the circumstances may require.
 (b) If a creditor has obtained a judgment on a claim against the debtor, the
creditor, if the court so orders, may levy execution on the asset transferred ").

Further the Trustee's remedies under §544 are not limited to the value of the

"golden creditor's" claims. The causes of action and remedies between M.G. L. 109A §8

and 11 U.S.C. §544 are different. M.G. L. 109A §8 is used to determine if the

hypothetical creditor in 11 U.S.C. §544 exists and thereby give rise to the Trustee's

Power.


8) **Inconsistent Argument.** If, as the Trustee would have the court believe, that

the state Fraudulent Transfer claims become property of the estate under §541, then the is

no need for § 544(b)(1). The Respondent and the Trustee confuse the claims themselves

with what they seek.

27

9) **General Creditors Causes of Action.** The trustee has no rights in Creditors Causes of Action against solvent third parties. See Section IV. A. 3) of this brief *supra*.

10) **Same names, Different Actions.** Causes of Action with the same name arising under different statutes and pursuable by different parties are different Causes of Action. (Example: Breach of Fiduciary Duty action brought by the corporation against its officers and directors would be governed by the law of the state of incorporation, while an action of the same name, Breach of Fiduciary Duty, brought by Creditors could be governed by the state of where the breach occurred.) Simply because the Creditors' Cause of Action is entitled Fraudulent Transfer, and the Trustee's Power deals with a similar concept, does not make them the same cause of action.

11) **Trustee Limitations.** The Trustee's Causes of Action are limited to those that the Debtor had on the date of the Bankruptcy filing and Trustee Powers invested by the Congress through the enactment of the Bankruptcy Code.

12) **Automatic Stay.** Creditors' Causes of Action may be properly stayed by the automatic stay when the objective of the Creditor Cause of Action is property of the estate in the hands of solvent third parties.  McCarthy  v. Litton Industries Inc., 410 Mass at 22 (The Court of Appeals affirmed the District Court, although on different grounds. It rejected the trustee's argument that the fraudulent transfer claims were property of the estate. 980 F.2d at 131. Under Section 541(a)(3) of the Bankruptcy Code, property of the estate includes property which the trustee recovers under various provisions of the Bankruptcy Code, including Section 550 which provides the remedy for recovering, inter alia, fraudulently transferred property. 980 F.2d at 131. If fraudulently transferred property were considered property of the estate prior to its recovery, Section 541(a)(3) would be meaningless. Id.  Rather, "a third party action to recover fraudulently transferred property is properly regarded as undertaken `to recover a claim against the debtor' and subject to the automatic stay pursuant to § 362(a)(1)". Id. at 131-32)

13) **Discharge in chapter 7.** Previous to 1977

a) The trustee pursued the Trustee's Cause of Action for Fraudulent Conveyance

b) The creditors were automatically stayed from pursuing their Cause of Action for Fraudulent Conveyance.

c) The corporation received a Discharge from Creditor Causes of Action

14) **No corporate discharge in chapter 7.** Now, since the corporation no longer receives a Discharge

    1) The trustee pursues the Trustee's Cause of Action for Fraudulent Conveyance

    2) The creditors are stayed from pursuing their Cause of Action for Fraudulent Conveyance.

    3) Since the corporation no longer receives a Discharge, the Creditors' Cause of Action for Fraudulent Conveyance, while stayed, continues its validity and can be pursued after the Automatic Stay expires, unless the trustee's suit has fully recovered all of the fraudulently transferred property.

This result protects the trustee from the "race to the courthouse"

15) **Relief from the Automatic Stay.** Relief from the Automatic Stay in respect to creditor causes of action which seek property of the estate is at the discretion of the Bankruptcy Court and the court did not see fit to grant such relief. However, nothing prevents the creditors from waiting until the Automatic Stay expires.

16) **Bankruptcy Court limited power**. The Bankruptcy Court no longer has the power, via a discharge, to foreclose a Creditor Cause of Action against a solvent third party holding former property of the estate once the Trustee has fully and completely compromised the Trustee's Cause of Action, waived all future rights to what had previously been property of the estate and <u>failed to fully recover the fraudulently transferred property</u>. It would be illogical to assume that what Congress has specifically prohibited from being done via a discharge for a chapter 7 corporate debtor, can be done via a release to a solvent third party non-debtor.

17) **Termination of Automatic Stay**. The Automatic Stay under 11 U.S.C. §362 is terminated in accordance with the provisions of paragraph (2) of subsection (c) "the stay of any other act under subsection (a) of this section continues until the earliest of "(A) the time the case is closed;

"(B) the time the case is dismissed; or

"(C) if the case is under chapter 7 of this title concerning an individual or a case under chapter 9,11,12, or 13 of this title, the time the discharge is granted or denied." Absent the granting of relief from the automatic stay by the Bankruptcy Court, the Creditors of a corporation have a right to wait until the stay expires and then pursue their claims against the Debtor and third Parties holding fraudulently transferred assets that were formerly, prior to the trustee's waiver, property of the Estate.

18) **After the Trustee has had his turn at bat**

After the trustee has his turn at bat, the creditors get up. Citizens Bank of Massachusetts v. Callahan, 653 N.E.2d 600, 38 Mass.App.Ct. 702 (Mass. App. Ct., 1995) (No Massachusetts cases have come to our attention on the question whether a creditor may utilize G.L. c. 109A once the Federal bankruptcy trustee is time-barred from recovering property that has been fraudulently transferred by the debtor. However, that question has been answered affirmatively by another State's court in applying the Uniform Fraudulent Conveyance Act in generally similar circumstances. Dixon v. Bennett, 72 Md.App. 620, 531 A.2d 1318, 1326 (1987),…. Aside from agreeing with the reasoning of this case, we are mindful of the direction that our statute "shall be interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it." )

**c.) Cases cited previously by the Respondent and the Trustee**

1.) <u>American Nat'l Bank of Austin v. MortgageAmerica Corp.</u> (In re MortgageAmerica Corp.), 714 F.2d 1266, 1275 (5th Cir. 1983). The Respondent and the Trustee confuse the issue of both the retained Debtor Cause of Action via a Constructive Trust (more commonly known in Massachusetts as a Resulting Trust) and the Trustee's §544 Cause of Action with the Creditor's Cause of Action under the Texas Fraudulent Transfers Act. The court stated "We hold the bank's state-law actions against Long under the trust fund (denuding) theory and under the Texas Fraudulent Transfers Act were, as the bankruptcy and district courts held, automatically stayed by §362(a)(3)of the Bankruptcy code immediately upon the filing of the petition for bankruptcy under §303 of the Code"

There would be no need for the automatic stay to take effect if the trustee's §544 Cause of Action somehow resulted from the assignment or merger of the Creditors Cause of Action.

2.) <u>Nat'l Tax Credit Partners, L.P. v. Havlik</u>, 20 F3d 705, 708-9 (7th Cir. 1994). In a case seeking a mandatory injunction requiring debtor's principals to defray any shortfall in the debtor's operating accounts, the court without contested argument made the gratuitous statement. "Similarly, the right to recoup a fraudulent conveyance, which outside bankruptcy may be invoked by a creditor, is property of the estate that only a trustee may pursue once a bankruptcy is underway."

3.) <u>Feiman,</u> 214 B.R. at 260 (1997*)* is a case about the equitable remedy of a constructive trust (more commonly known in Massachusetts as a Resulting Trust) which has nothing to do with a legislatively created Creditor Cause of Action for Fraudulent Transfer except that they have some similar but not entirely overlapping elements.

4.) <u>J.F.D Enterprises, Inc</u>. 223 B.R. at 610 (1998) is a case about creditors who were attempting to pursue a Debtor Cause of Action for Breach of Fiduciary Duty against the directors and managers for harm to the corporation. (An action seeking damages for harm to a corporation based on the *prepetition* conduct of its directors or managers becomes the property of the estate upon the filing of a bankruptcy petition. See 11 U.S.C. § 541(a)(1) (bankruptcy estate includes, inter alia, "all legal or equitable interests of the debtor in property as of the commencement of the case").  It has little to do with a legislatively created Creditor Cause of Action for Fraudulent Transfer.

5.) <u>Campana v. Pilavis (In re Pilavis),</u> 233 B.R. 1 (Bankr. D. Mass. 1999) in this case, <u>which was decided by Judge Hillman, who is the bankruptcy judge from whose order this appeal is taken</u>,  the parties <u>assumed </u>that the fraudulent transfer action became property of the estate and the Judge further stated "Neither the Debtor nor the Trustee disputes the fact that the fraudulent conveyance action became property of the estate when the Debtor filed for relief."

Additionally, the head note of the case states "Fraudulent conveyance action belonging to one of the creditors became property of the estate when the debtor filed for

chapter 7 relief; accordingly, the trustee became proper party to prosecute this cause of action. Unlike the Appellant's Creditor's Causes of Action, in Pilavis the complainant removed his state court case to the bankruptcy court and consented to the bankruptcy court's jurisdiction.

Further, in contradistinction to the Pilavis case, the Third Circuit found that state law fraudulent transfer claim which debtor was authorized to pursue, pursuant to strong-arm statute, in its capacity as a chapter 11 debtor-in-possession was not an asset which belonged to debtor personally; accordingly, cause of action was not sold to third party, as part of court approved sale of debtor's assets, <u>Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)</u> 226 F3d 237, 242 (3d Cir. 2000 ("Does this mean that the chapter 11 debtor in possession acquires its creditors' fraudulent transfer claims against third parties as a result of filing for bankruptcy? As explained below, the answer is clearly "no."") ("When no trustee is appointed, the Bankruptcy Code gives Chapter 11 debtor-in-possession the powers and duties of the trustee. Bankr. Code 11 U.S.C.A. section 1107 (a) ").

The Trustee would have the court believe that because the <u>Cybergenics</u> case involved "assets" as opposed to "Property of the Estate," the court did not address the issue head on. However at 242 the court stated "Thus, at least outside of the contest of bankruptcy, it is clear that a fraudulent transfer claim arising from Cypbergenics transfers and obligations belongs to Cybergenics creditors, not to Cybergenics. Other applicable nonbankruptcy laws may give Cybergenics various cause of action with which to challenge its own transactions and obligations, but a fraudulent transfer action is not

among them." Further, the court found at 244 "As further evidence that the avoidance powers neither shift ownership of the fraudulent transfer action to the debtor in possession, nor are the debtor's assets, we note that the courts have limited a debtor's exercise of avoidance powers to circumstances in which such actions would in fact benefit the creditors, not the debtor themselves"

And finally At Footnote 16, the court most tellingly stated,"16. Even if we agreed that an analysis of property of the estate was necessary to resolve this dispute, our outcome would not change due to the cause of action at issue here, subject to a few specifically enumerated exceptions, the bankruptcy estate contains only the interests of the *debtor* in property as of the time of the bankruptcy filing, "no more no less*."* In re Jones, 768 F.2d 923 , 927 (7th Cir.1985) (citation omitted). As we have already explained the fraudulent transfer action belonged to Cybergenics creditors as of the time of the bankruptcy filing. It bears emphasis that we focus here on the cause of action to avoid the transfer, not on any sort of "equitable interest" that some courts have said may be retained by a debtor in fraudulently-transferred property."

## 2. The trustee cannot compromise a Creditor Cause of Action for Alter Ego which is governed by Massachusetts law.

In cases where state law allows a subsidiary corporation to assert an alter ego action against its own parent corporation, or when a corporation may under state law assert the claim against its own principals, the trustee in bankruptcy succeeds to rights the debtor corporation holds  and is therefore afforded standing to bring such an action on behalf  of the debtor corporation. In re Adam Furniture Industries, 191 B.R. 249; 1996 Bankr. LEXIS 6; Bankr. L. Rep.(CCH) P76,911; 28 Bankr. Ct. Dec. 433. See also numerous non-Massachusetts cases cited in the Trustee's Objection paragraphs 39, 40 and 46, although in Footnote 4 of the Trustee's Objection he concedes that, in this case, Massachusetts law controls an alter ego claim. Some states vest alter ego actions in third parties See Mixon supra at 1225. Further, a number of cases have found  recognized that an alter ego claim may not be  asserted by a trustee (Trustee of corporate debtors lacks standing under 11 USCS § 544(a) to assert alter-ego claim on behalf of debtors' creditors.) Buchanan v Henderson (1990, DC Nev) 131 BR 859, revd, remanded on other grounds (1993, CA9 Nev) 985 F2d 1021, 93 CDOS 1029. (Trustee lacks standing under federal law to bring collective action, based, in part, on piercing corporate veil, against corporate officer and shareholders of debtor to redress individual wrongs since, under Oregon law, disregard of corporate entity is extraordinary remedy which is last resort of individual creditor and such action is not corporate right which trustee could obtain as asset of estate under 11 USCS § 541(a); 11 USCS § 544(a) does not give trustee standing to bring action against corporate shareholders and officers alleging abuses of position by payment of personal expenses, bonuses and other insider payments, failure to maintain

adequate capital, misrepresentation to creditors of debtor's financial condition and intention to pay its debts, and failure to maintain corporate records, because complaint mixes corporate cause of action, which trustee has right to bring under 11 USCS § 541(a), with individual creditor causes of action.) In re Morgan-Staley Lumber Co. (1986, BC DC Or) 70 BR 186.. (11 USCS § 544 does not authorize corporate Chapter 7 debtor's trustee to recover on alter ego action since statute gives trustee only rights and powers to avoid transfers of debtor's property or obligations incurred by debtor which could be avoided by creditor or bona fide purchaser.) Amazing Enters. v Jobin (In re M & L Business Mach. Co.) (1992, BC DC Colo) 136 BR 271, 22 BCD 881, affd (1993, DC Colo) 160 BR 850. *But See:* In re City Communications, Ltd. (1989, BC ND Ga) 105 BR 1018, 21 CBC2d 1052, CCH Bankr L Rptr P 73107.

There are many well known cases in Massachusetts where the plaintiff in an alter ego action is a Creditor. In the most cited case, My Bread Baking Co. v.. Cumberland Farms, Inc., 353 Mass. 614, 620, 233 N.E. 2d 748 (1968), the winning plaintiff was a creditor. Additional, well-cited cases dealing with alter ego in Massachusetts had Creditors as plaintiffs. In none of these cases was the creditor denied their alter ego action as a result of being a. Kroutik v. Momentix, Inc., No. 012895BLS, 2003 WL 1962486, at 7 (Mass. Super. April 2, 2003). Evans v. Multicon Construction Corp., 30 Mass App. Ct. 728, 574 NE 2d 395 (1991), Birbara v. Locke 99 F.3d 1233 (1st cir. 1996) "..the trustee failed to cite any cases from Massachusetts where the corporation or its shareholders  as opposed to creditors or third parties, have been permitted to assert an alter ego cause of action to pierce the corporate veil.*"* In re Ipswich Bituminous Concrete Products, Inc., 79 B.R. 511; 1987 Bankr. LEXIS 1745

After an extensive search, of over 20 reported cases, we were unable to find a Massachusetts case where the plaintiff in an alter ego case was the Debtor corporation or the Trustee taking the place of the Debtor corporation.

The  Trustee states in his Objection that "Because Massachusetts law is silent on the issue", the court should follow the  less desirable method rather than the more the desirable method which they state as "the general standard in this area, an  alter ego claim may be asserted by the trustee if (a) under governing law the debtor could have asserted an alter ego claim to pierce its own veil; <u>and</u>  (b) the claim is a general one of the type that could be brought by any creditor of the debtor".

However, Massachusetts law is not silent, it "shouts down through the ages". An alter ego claim in Massachusetts is not a claim based on statute, but rather on judicial case law. The Trustee has  ***<u>failed to cite any Massachusetts case law</u>*** that would allow the debtor to pursue an alter ego claim. Additionally, using the trustees own test in the prior paragraph (a <u>and</u> b), because as discussed in section IV A 3) of this brief, the trustee does not succeed to general creditor claims against solvent third party non-debtors.

### 3. The trustee cannot compromise a Creditor Cause of Action for Breach of Fiduciary duty to the Creditors

There are clearly <u>two</u> distinct causes of action:

Breach of Fiduciary Duty by the directors to the Corporation

 Breach of Fiduciary Duty by the directors to the Creditors

The trustee, in an attempt to muddle the issues, in his Objection at paragraph 34 cites a long list of cases (citations omitted) for the premise that a Breach of Fiduciary Duty by the directors to the Corporation belongs to the corporation/shareholders. We agree. But he misses the point.

The Cause of Action which the Creditors seek to pursue is for Breach of Fiduciary Duty by the directors to the Creditors. The Debtor is a Delaware company. ("Inasmuch as defendant is a Delaware corporation, claims of breach of fiduciary duty by corporate officers are evaluated by looking to Delaware corporate law. Massachusetts law requires that a court look to the law of the state of incorporation to determine the corporation's liability to its stockholders or creditors.") _Beacon Wool Corp. v. Johnson,_ 1954, 331 Mass. 274, 279, 119 N.E.2d 195.; _Massaro v. Vernitron Corp.,_ 559 F.Supp. 1068 (Mass., 1983)

The sharp distinction under Delaware law between a Breach of Fiduciary Duty of the directors to the Corporation  and a Breach of Fiduciary Duty of the directors to the Creditors is illustrated in _Harff v. Kerkorian,_ 324 A.2d 215 (Del. Ch., 1974). In Delaware, a suit Breach of Fiduciary Duty of the directors to the Corporation is brought derivatively by the shareholders. A suit for Breach of Fiduciary Duty of the directors to the Creditors is brought by the creditors. _Harff Id._ The trustee has no power to bring a suit on behalf of the creditors. See Section IV A 3) of this brief _supra._

### 4. The trustee cannot compromise a Creditor Cause of Action for Successor Liability.

The elements of a cause of action under Massachusetts law for successor liability have recently been succinctly stated. _Milliken & Company v. Duro Textiles_, 19 Mass. L. Rptr. No. 22, 509 (MA 6/14/2005), 19 Mass. L. Rptr. No. 22, 509 (MA, 2005) (Generally, when one company purchases the assets of another, the purchaser does not thereby acquire the debts and liabilities of the seller. _Cargill, Inc. v. Beaver Coal & Oil Co., Inc.,_ 424 Mass. 356, 359 (1997); _McCarthy v. Litton Industries, Inc.,_ 410 Mass. 15, 21 (1991). There are four exceptions to this rule: liability may be imposed on the

purchasing corporation where the purchaser impliedly or explicitly agrees to assume the liability of the seller, where the transaction is fraudulently entered into to avoid liability, where the transaction amounts to a de facto merger, or where the purchasing corporation is a mere continuation of the selling corporation. Cargill, and McCarthy supra. The public policy behind these exceptions is the fair remuneration of creditors. Cargill,. at 362 .

 Further the test of "mere continuation is stated. (A transaction in which all of the assets of an insolvent corporation are sold to an entity which is both a controlling shareholder of the debtor and its primary secured lender, followed by the retention of all operating personnel, payment of selected creditors needed for the continued operation of the business, and a termination of essentially all operations by the old corporation constitutes a "mere continuation" of the original business and therefore imposes successor liability on the new corporation.) Milliken Id.

And the court further stated the Creditor's Cause of Action. (Under Massachusetts law, imposition of successor liability does not depend on the status of a particular creditor as secured or unsecured or on whether the assets of the predecessor corporation were sufficient to pay all its outstanding debts; rather, the analysis focuses on whether one company has become another for purposes of its corporate debt.   Coastal Oil  New England, Inc. v. Citizens Fuels Corp., 9 Mass. L. Rptr. 708, 1999 WL 140139 at *6 (Mass.Super.Ct. March 5, 1999), aff'd, 55 Mass.App.Ct. 69, rev. den., 437 Mass. 1106 (2002

Clearly, under Massachusetts law, successor liability is an action brought by a creditor and the Trustee, contrary to the position in paragraphs 35-38 of the Trustee's

Objection and the non Massachusetts cases cited threin, has no authority to represent the creditors. See Section IV A. 3) of this brief supra.

## 5. The trustee cannot compromise a Creditor Cause of Action for Fraud and Deceit.

Fraud and Deceit is perpetrated upon a plaintiff, in this case the individual creditors and also perhaps the Debtor. "To prove fraud or deceit a plaintiff must show that the defendant misrepresented a material fact, with knowledge of its falsity, for the purpose of inducing action thereon and that the plaintiff relied on the representation as true and acted upon it to its damage." Reisman v. KPMG Peat Marwick LLP, 57 Mass.App.Ct. 100, 109 (2003); Copperbeech Partnership, Ltd. v. Seegel, 17 Mass. L. Rptr. No. 30, 701 (MA 5/5/2004), 17 Mass. L. Rptr. No. 30, 701 (MA, 2004). If the Trustee desires to compromise the Debtors Cause of Action for Fraud and Deceit, that would appear to be appropriate. But he may not compromise a Creditor Cause of Action for Fraud and Deceit.

## 6. Creditor Causes of Action are themselves not Property of the Estate.

11 U.S.C. Section 541. Property of the estate

    (a) The commencement of a case under section 301, 302, or 303 of

      this title creates an estate. Such estate is comprised of all the

      following property, wherever located and by whomever held:

        (1) Except as provided in subsections (b) and (c)(2) of this

        section, all legal or equitable interests of the debtor in

property as of the commencement of the case.

The trustee in paragraph 23 of the Trustee's Objection states "the Trustee has agreed to settle all of the claims asserted in the state court action by Morley and McCoy that constitute property of the estate under section 541(a) of the bankruptcy code or which would otherwise (sic) asserted for the benefit of Ontos' creditors generally (including Morley and McCoy).

Clearly, the cause of action arising under M.G.L. 109A for Fraudulent Transfer can only be brought by a creditor and the cause action was not a "legal or equitable interests of the debtor in property as of the commencement of the case." Similarly, the creditor Causes of Action for Alter Ego, Breach of Fiduciary Duty by the directors to the Creditors, an Successor Liability were not "legal or equitable interests of the debtor in property as of the commencement of the case." The trustee may recover property of the estate using Debtor Causes of Action or a Trustee Power. He may not use a Creditor Cause of Action as a method for recovery. See Section IV A. 3) of this brief supra.

## V. Conclusion and Relief Sought

### A.  Conclusion

The orders of the Bankruptcy Court which provide for the release of direct Creditor Causes of Action of the solvent non-debtor third parties are not authorized by the Bankruptcy Code.

### B.  Relief sought

1) The Court vacate the order of the Bankruptcy Court granting the Trustee's Motion.

or alternatively

The Court vacate so much of the order of the Bankruptcy Court granting the Trustee's Motion which seeks to release any of the Appellants' state court based Creditor Causes of Action of:

a) Fraudulent Conveyance, and/or

b) Alter Ego, and/or

c) Breach of Fiduciary Duty by the directors to the Creditors, and/or

d) Successor Liability, and/or

e) Fraud and Deceit

or alternatively

The Court vacate so much of the order of the Bankruptcy Court granting the Trustee's Motion which seeks to release any state court based Creditor Causes of Action.

2) The Court vacate the order of the Bankruptcy Court denying the Appellants' Objection.

3) The Court find that the Bankruptcy Court lacks jurisdiction to determine the Appellant's state-based Causes of Action for

　　a) Fraudulent Conveyance, and/or

　　b) Alter Ego, and/or

　　c) Breach of Fiduciary Duty by the directors to the Creditors, and/or

　　d) Successor Liability, and/or

　　e) Fraud and Deceit

or alternatively

The Court find that the Bankruptcy Court lacks jurisdiction to determine the Appellant's state-based Causes of Action

4) In the event that the Court finds that the Bankruptcy Court has gained jurisdiction over any of these Causes of Action, the Court find that the Bankruptcy Court lacks the power to release the causes of action of creditors against solvent non-debtor third parties of:

　　a) Fraudulent Conveyance, and/or

　　b) Alter Ego, and/or

　　c) Breach of Fiduciary Duty by the directors to the Creditors, and/or

　　d) Successor Liability, and/or

　　e) Fraud and Deceit

or alternatively

The Court find that the Bankruptcy Court lacks the power to release the causes of action of creditors against solvent non-debtor third parties

5) In the event that the Court finds that the Bankruptcy court has gained jurisdiction over any of these Causes of Action, and the Court find that the Bankruptcy Court has the power to release non-debtors from third party claims, the Court find that the present case lacks any of the "unique" aspects described in the cited cases which would authorize the Bankruptcy Court to release the causes of action of creditors against solvent non-debtor third parties of:

   a) Fraudulent Conveyance, and/or

   b) Alter Ego, and/or

   c) Breach of Fiduciary Duty by the directors to the Creditors, and/or

   d) Successor Liability, and/or

   e) Fraud and Deceit

or alternatively

The Court find that the present case lacks any of the "unique" aspects described in the cited cases which would authorize the Bankruptcy Court to release the causes of action of creditors against solvent non-debtor third parties

6) The court find that the Automatic Stay will expire pursuant to 11 U.S.C. §362 (c)(2) at "the earliest of-

         (A) the time the case is closed;

         (B)  the time the case is dismissed; or

(C)   if the case is under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time the discharge is granted or denied."

7) The court find that under 11 U.S.C. 727 (a)(1) a corporate debtor does not receive a discharge in a chapter 7 bankruptcy.

8) The court order that any future waiver or release authorized by the Bankruptcy court of solvent non-debtor third parties specifically exclude the Creditor Causes of Action of:

a) Fraudulent Conveyance, and/or

b) Alter Ego, and/or

c) Breach of Fiduciary Duty by the directors to the Creditors, and/or

d) Successor Liability, and/or

e) Fraud and Deceit

or alternatively

The court order that any future waiver or release authorized by the Bankruptcy court of solvent non-debtor third parties specifically exclude the Creditor Causes of Action

9) The Court order that the Bankruptcy Court consider and apply the findings of the Court in respect to any future Motion to Proceed that the Appellants' may file with the Bankruptcy Court.

10) Such other relief as the court may deem appropriate.

Dated:  October 6, 2005                         Respectfully Submitted,
Boston, MA


                                                /s/ T. Mark Morley
                                                _____
                                                T. Mark Morley,
                                                (BBO#355320)
                                                30 Deerpath Road
                                                Dedham, Massachusetts 02026


                                                Attorney for Appellants
                                                T. MARK MORLEY and
                                                THOMAS J. MCCOY




                        CERTIFICATE OF SERVICE

        I, T. Mark Morley, hereby certify that on October 6, 2005, I caused true and
correct copies of the forgoing document to be sent to the Chapter 7 trustee, Joseph G.
Butler, and on the persons listed below by mailing a copy of the same by first class mail
or by FedEx where indicated.


                                                /s/ T. Mark Morley
                                                _____


Joseph G. Butler
Barron & Stadfeld
50 Staniford Street
Suite 200
Boston, MA  02114

Donald F. Farrell, Jr.
Philip Silverman
Anderson Aquino LLP
260 Franklin Street
Boston, MA, 02110
(by FedEx)

John Fitzgerald
Office of the U.S. Trustee
10 Causeway Street
Boston, MA 02222


American Express Travel Rel.
Svcs. Co. Inc. Corp. Card
c/o Rhonda E. Rosenblum
Becket & Lee LLP
PO Box 3001, Dept. AC
Malvern, PA 19355


Firestar Software, Inc. and Kenneth Lord
c/o Harold B. Murphy
Christian J. Urbano
Hanify & King P.C.
1 Beacon Street
Boston, MA 02108

Firestar Software, Inc., Kenneth Lord, VennWorks LLC,
Amphion Ventures, Robert J. Bertoldi and Richard C.E. Morgan
c/o Eric P. Heichel, Esq.
Eiseman Levine Lehrhaupt & Kakoyiannis, P.C.
845 Third Avenue
New York, NY 10022


Bowditch & Dewey
161 Worcester Rd.
Box 9320
Framingham, MA 01701

Dept. of the Treasury-IRS
JFK PO Box 9112
Insolvency Group 2
Stop 20800
Boston, MA 02203


102180