## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

### Appeal Nos. 05–11708 (RGS), 05–11710 (RGS)

---

### IN RE ONTOS, INC.

### Bankruptcy No. 04–10157 (WCH)

### Chapter 7

---

### On Appeal from Orders of the United States Bankruptcy Court
### For the District of Massachusetts (Eastern Division)
### (Hon. William C. Hillman, United States Bankruptcy Judge)

---

### BRIEF OF APPELLEE, JOSEPH G. BUTLER, CHAPTER 7 TRUSTEE

---

.

**Joseph G. Butler (BBO#544284)**
**BARRON & STADFELD, P.C.**
100 Cambridge Street
Suite 1310
Boston, MA 02114
Tel:    (617) 723-9800
*Counsel to Joseph G. Butler in his*
*Capacity as Chapter 7 Trustee of the*
*Estate of Ontos, Inc.*

Dated:  October 24, 2005

## TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Basis of Appellate Jurisdiction ............................................................................... 1

Counter-statement of the Issues ............................................................................. 1

The Applicable Standard of Appellate Review ...................................................... 2

Statement of the Case ................................................................................................ 2

Statement of the Facts .............................................................................................. 4

Argument .................................................................................................................... 9

    A.  The Bankruptcy Court Has Jurisdiction to Hear and Determine the Trustee's Motion to Approve and Related Stipulation. ...................................................................... 9

    B.  The Fraudulent Transfer and Alter Ego Claims That the Appellants Assert in the State Court Action, and the Breach of Fiduciary Duty and Successor Liability Claims That the Appellants Assert They "May Have" against the Appellees, Are Property of the Estate under 11 U.S.C. § 541 for Which the Trustee Has Exclusive Standing to Pursue and Compromise. .................................................................................................... 11

        1.  The Trustee Has Exclusive Standing to Pursue and/or Compromise the Fraudulent Transfer Claims. ........................................................................................ 13

        2.  The Trustee Has Exclusive Standing to Pursue and/or Compromise the Breach of Fiduciary Duty Claims. ...................................................................................... 17

        3.  The Trustee Has Exclusive Standing to Pursue and/or Compromise the Successor Liability Claims. ............................................................................................. 19

        4.  The Trustee Has Exclusive Standing to Pursue and/or Compromise the Alter Ego Claims. .................................................................................................................. 21

        5.  The Trustee Also Derives Exclusive Standing to Pursue and/or Compromise the Alter Ego Claims Pursuant to Section 544 of the Bankruptcy Code ............................ 26

Conclusion ................................................................................................................. 30

## TABLE OF AUTHORITIES

### Federal Cases

*American Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266 (5th Cir. 1983) ............................................. 13, 24, 27

*ANR Limited Inc. v. Chattin*, 89 B.R. 898 (D. Utah 1988) ............................................. 18, 22, 25

*Brandt v. Hicks, Muse & Co., Inc. (In re Healthco Int'l, Inc.)*, 208 B.R. 288 (Bankr. D. Mass. 1997) .................................................................................18

*Brandt v. Repco Printers & Lithographics (In re Healthco Int'l, Inc.)*, 132 F.3d 104 (1st Cir. 1997) ...................................................................................... 2

*Campana v. Pilavis (In re Pilavis)*, 233 B.R. 1 (Bankr. D. Mass. 1999) .................. 13, 14, 15, 16

*Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416 (1972) .................28, 29

*CBS, Inc. v. Folks (In re Folks)*, 211 B.R. 378, 387-88 (B.A.P. 9th Cir. 1997)...................18, 21

*Delgado Oil Co. v. Torres*, 785 F.2d 857, 861-62 (10th Cir. 1986)...........................................19

*Devine & Devine Food Brokers, Inc. v. Wampler Foods, Inc.*, 313 F.3d 616 (1st Cir. 2002) ...............................................................................................20

*DiStefano v. Stern (In re J.F.D. Enterpr., Inc.)*, 223 B.R. 610 (Bankr. D. Mass. 1998) .......12, 14

*Feinman v. Lombardo*, 214 B.R. 260 (Bankr. D. Mass. 1997) ............................................12, 14

*Gosconcert v. Hillyer*, 158 B.R. 24 (S.D.N.Y. 1993) ...............................................................23

*Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45 (1st Cir. 1998)........ 4

*In re Bridge Information Systems, Inc.*, 325 B.R. 824 (Bankr. E.D. Mo. 2005) ............................................................10, 13, 16, 20, 21, 26

*In re Continental Airlines*, 138 B.R. 442 (D. Del. 1992)............................................................ 9

*In re Cybergenics Corp.*, 226 F.3d 237 (3rd Cir. 2000) ................................................ 14, 15, 16

*In re Doemling*, 127 B.R. 954 (W.D. Pa. 1991) .......................................................................15

*In re Ipswich Bituminous Concrete Prods. Inc.*, 79 B.R. 511 (Bankr. D. Mass. 1987)...............25

*In re Kaiser*, 791 F.2d 73 (7th Cir. 1986) ...............................................................................21

*In re Servisense.com, Inc.*, 382 F.3d 68 (1st Cir. 2004)............................................................. 2

*In re Van Dresser Corp.*, 128 F.3d 945 (6th Cir. 1997) ............................................................18

*In re Vermont Toy Works, Inc.*, 82 B.R. 258, 300-09 (Bankr. D. Vt. 1987) .............................26

*Intrex, Inc. v. Commissioner*, 321 F.3d 55, 58 (1st Cir. 2003) ....................................................... 2

*Langenkamp v. Kulp*, 498 U.S. 42 (1990) ..................................................................................11

*Kalb, Voorhis & Co. v. American Financial Corp.*, 8 F.3d 130 (2d Cir. 1993)...................13, 24

*Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339
(7th Cir. 1987) *cert. denied*, 485 U.S. 906 (1987)...................................17, 18, 21, 22, 23, 28, 29

*Krol v. Wilcek (In re H. King & Assoc.)*, 295 B.R. 246 (Bankr. N.D. Ill. 2003).................18, 19

*Mixon v. Anderson (In re Ozark Restaurant Equipment Co., Inc.)*,
816 F.2d 1222 (8th Cir. 1987) *cert. denied* 484 U.S. 848 (1987) ........................................17, 28

*Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439 (4th Cir. 1999)........................24

*Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705 (7th Cir. 1994)..............................13, 16

*Pereira v. Cogan*, 265 B.R. 32 (S.D.N.Y. 2001)...................................................................23, 24

*Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228 (3rd Cir. 1994)......................................25

*Ranalli v. Ferrari (In re Unifi Comm., Inc.)*, 317 B.R. 13 (D. Mass. 2004)..............................18

*S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc. (In re S.I. Acquisition, Inc.)*,
817 F.2d 1142 (5th Cir. 1987)................................................................................21, 22, 23

*Sobchack v. Am. Nat'l. Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*,
17 F.3d 600 (2d Cir. 1994)..........................................................................................9, 18

*St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*,
884 F.2d 688 (2d Cir. 1989) .................................................12, 18, 21, 22, 23, 24, 25

*Stamps v. Knoblach (In re City Communications, Ltd.)*,
105 B.R. 1018 (Bankr. N.D. Ga. 1989) .........................................................................22, 23

*Steinberg v. Buczynski*, 40 F.3d 890 (7th Cir. 1994) .................................................................28

*Steyr-Daimler-Puch of America Corp. v. Pappas*, 852 F.2d 132,
135, 136 (4th Cir. 1988)..............................................................................................21, 22

*Tsai v. Buildings by Jamie, Inc. (In re Buildings by Jamie, Inc.)*,
230 B.R. 36 (Bankr. D.N.J. 1998) .................................................................................21

*Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir.1988) ...................................................23

### State Cases

*George v. Parke-Davis*, 733 P.2d 507, 510 (Wash. 1987)........................................................20

*Vernon v. Schuster*, 688 N.E. 2d 1172 (Ill. 1997) ...................................................................20

### Federal Statutes

11 U.S.C. § 362 ...................................................................................... 11, 12, 16, 27

11 U.S.C. § 541 .................................................................. 2, 4, 11, 12, 15, 20, 21, 22, 27

11 U.S.C. § 544 ................................................2, 4, 11, 12, 13, 21, 22, 26, 27, 28, 29

11 U.S.C. § 548 ............................................................................................16, 26

28 U.S.C. § 151 ......................................................................................................11

28 U.S.C. § 157 ...............................................................................1, 9, 10, 11

28 U.S.C. § 158 ........................................................................................................ 1

28 U.S.C. § 1334..............................................................................................9, 10, 11

### Federal Rules

Fed. R. Bankr. P. 8013 ........................................................................................... 2

LR, D. Mass. 201 ....................................................................................................10

### Additional Authorities

19 Am.Jur. 2d. Corporations §§ 2300 to 2347 ...................................................19, 20

63 Am.Jur. 2d *Products Liability* §§ 116 to 139 .............................................19, 20

Prof. Ralph Brubaker, *Piercing the Corporate Veil of a Bankruptcy Debtor: Distinguishing the Bankruptcy Estate's Distinctive Roles as Successor to the Debtor and As "Super Creditor,"* in *Bankruptcy Law Letter* (Vol. 25, No. 9, September 2005) ...................................... 26, 27, 28, 29

William Fletcher, Fletcher Cyclopedia of Private Corp., § 41.10..............................................26

## Basis of Appellate Jurisdiction

This is an appeal from two Orders of the United States Bankruptcy Court for the District of Massachusetts, Eastern Division (Hillman, J.) ( the "Bankruptcy Court"), each entered on June 29, 2005, granting the *Motion by the Trustee to Approve Stipulation by and between Trustee and Vennworks, LLC, Amphion Ventures, Firestar Software, Inc., Robert J. Bertoldi, Richard C.E. Morgan and Kenneth Lord* (the "Motion to Approve"), overruling the *Objection to the Motion by the Trustee for Approval of Stipulation* (the "Objection"), and denying the *Motion by Creditors Morley and McCoy for Order Authorizing Them to Proceed Against Debtor's Solvent Co-Defendants* (the "Motion to Proceed") (collectively, the "Bankruptcy Court Orders").  The appellants, T. Mark Morley ("Morley") (Case No. 05-11708) and Thomas McCoy ("McCoy") (Case No. 05-11710), each filed a notice of appeal with the Bankruptcy Court on July 11, 2005. This Court has jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158(a)(1), which states that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [28 U.S.C. § 157]."

## Counter-statement of the Issues

Whether the Bankruptcy Court erred in denying the relief requested in the Motion to Proceed and granting the relief requested in the Motion to Approve, holding that Joseph G. Butler, the duly-appointed chapter 7 trustee (the "Trustee") of the estate of Ontos, Inc. (the "Debtor" or "Ontos"), had the exclusive standing (a) to pursue and/or compromise alleged claims for fraudulent transfer and alter ego liability originally brought in a prepetition state court action by Morley and McCoy (collectively, the "Appellants"), and (b) to pursue and/or compromise alleged breach of fiduciary duty and successor liability claims that have never formally been asserted in any court proceeding by the Appellants or any other creditor of the Debtor's estate?

1

## The Applicable Standard of Appellate Review

On appeal to the District Court, rulings of law by the Bankruptcy Court are reviewed *de novo*, while findings of fact are accepted unless clearly erroneous. Fed. R. Bankr. P. 8013. *See Intrex, Inc. v. Commissioner*, 321 F.3d 55, 58 (1st Cir. 2003); *Brandt v. Repco Printers & Lithographics (In re Healthco Int'l, Inc.)*, 132 F.3d 104, 107 (1st Cir. 1997). The approval of a compromise, which is the issue lying at the core of this appeal, is within the sound discretion of the bankruptcy judge, and an appeals court should not overturn an approved compromise unless it finds that the bankruptcy judge abused his discretion. *See In re Servisense.com, Inc.*, 382 F.3d 68, 71-72 (1st Cir. 2004).

## Statement of the Case

On March 11, 2005, the Trustee filed the Motion to Approve. The Motion to Approve sought an order from the Bankruptcy Court approving a settlement stipulation between the Trustee and Vennworks, LLC ("Vennworks"), Amphion Ventures LP ("Amphion"), Firestar Software, Inc. ("Firestar"), Robert J. Bertoldi ("Bertoldi"), Richard C.E. Morgan ("Morgan") and Kenneth Lord ("Lord," and, collectively with Vennworks, Amphion, Firestar, Bertoldi, and Morgan, the "Appellees") that, *inter alia*, included a waiver and release of fraudulent transfer and alter ego claims originally asserted by the Appellants in a prepetition state court action commenced in Massachusetts Superior Court, Essex County, Civil Action No. 02-1161-B (the "State Court Action"). The Trustee and Appellees asserted that the Trustee had exclusive standing to compromise these claims because each claim constituted property of the estate under section 541(a) of the Bankruptcy Code or, alternatively, could have been asserted by the Trustee

for the benefit of the Debtor's creditors generally (including the Appellants) under section 544 of the Bankruptcy Code.[1]

The Appellants filed their Objection to the Motion to Approve, arguing that the Trustee lacked standing to compromise the fraudulent transfer and alter ego claims.[2]  The Appellants also argued that they also "might have" claims against the Appellees for breach of fiduciary duty that the proposed settlement stipulation would improperly waive and release.  In addition, the Appellants argued that the Trustee's proposed settlement stipulation was improper because he failed to account for an allegedly viable successor liability claim that was "available to him."[3] (The fraudulent transfer, alter ego, breach of fiduciary duty, and successor liability claims are collectively referred to herein as the "Claims").  Each of the Claims stemmed from an alleged fraudulent transfer of ObjectSpark, one of the Debtor's proprietary software programs being developed at the time of the transfer, to Firestar.

The Appellants also argued to the Bankruptcy Court that the compromise was unreasonable and should be rejected, even though the Trustee found that the compromise was clearly the best way to maximize the return to the Debtor's estate.  The Bankruptcy Court rejected Appellants' objections and approved the Stipulation on the merits.  The Appellants have apparently abandoned their argument that the Stipulation factually is not in the best interests of

---

[1]  The Trustee did not purport to compromise the "personal" claims asserted by the Appellants in the State Court Action for violation of the Massachusetts Wage Act or fraud and deceit.  These personal claims are currently pending in the State Court Action.

[2]  In addition, the Appellants filed the Motion to Proceed, requesting authority to proceed against the Appellees in the State Court Action on the Claims (as defined below).

[3]  As set forth below, the Appellants reversed their position and now argue that the settlement stipulation would have the effect of improperly waiving and releasing a viable successor liability claim that the Trustee is without standing to pursue or compromise.

3

the estate on appeal or that the Stipulation "falls below the lowest point in the range of reasonableness." *Hicks, Muse & Co., Inc. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45, 51 (1st Cir. 1998).

The Bankruptcy Court correctly overruled the Appellants' Objection, denied their Motion to Proceed, and granted the Trustee's Motion to Approve because, as argued by the Appellees and the Trustee, it is well settled that the fraudulent transfer and breach of fiduciary duty claims are property of the estate under section 541 of the Bankruptcy Code and as such, the Trustee has *exclusive* standing to pursue and/or compromise such claims. The Bankruptcy Court further acknowledged the Trustee and Appellees' arguments that the breach of fiduciary duty, alter ego and successor liability theories of liability were each derivative of the fraudulent transfer claim such that only the Trustee had standing to compromise those claims. As set forth more particularly herein, case law and well-reasoned secondary authority also support the Trustee's alternative argument that the Trustee's *avoidance power* under section 544(a) of the Bankruptcy Code provides him with an additional basis for standing to pursue and compromise such claims. Accordingly, this Court should affirm the Bankruptcy Court Orders denying the relief requested in the Motion to Proceed and granting the relief requested in the Motion to Approve.

### Statement of the Facts

Ontos was formed as a Delaware corporation (then known as Simple Logic, Inc.) in 1987. Amphion made its first investment in Ontos in 1997 and Vennworks made its first investment in Ontos in 1999.

In the mid-1990s, Ontos developed software and provided technology consulting services. The technology underlying "ObjectSpark" had its origins in the work of Ontos engineers who sought to create object-oriented data management and application development

software, particularly related to internet applications. In the late 1990s, of course, software development and internet technology companies like Ontos were in vogue.

Like many technology companies, however, Ontos' efforts were unsuccessful and, by 2000, the internet business bubble was bursting. Ontos had very little revenue and was only surviving through cash infusions in the form of loans from its then majority shareholders, Vennworks and Amphion. In 2000, the Ontos Board of Directors directed that Ontos try to sell ObjectSpark to another company in order to raise cash. Extensive efforts were undertaken to try to find a buyer. Virtually all of the officers and directors of Ontos made efforts to sell ObjectSpark. Despite several months of efforts by those individuals and others, including an outside investment banker, Ontos did not receive a single offer for ObjectSpark at any price. Morley, Ontos' chief financial officer, was part of the efforts to try to sell ObjectSpark, but his efforts also failed. Indeed, Morley contacted over a dozen other outside investment bankers to try to engage one to undertake sales efforts, but he could not even get an investment banking firm to agree to accept the assignment. There simply was no market for unproven software technologies like ObjectSpark.

Lord was brought in the late spring of 2001 to attempt to keep the ObjectSpark development effort afloat while Ontos tried to locate a buyer. As no other buyer was forthcoming, Ontos accepted Lord's proposal for Firestar, an acquisition company formed by Lord, to purchase ObjectSpark. By this time – the late summer of 2001 – Ontos was in desperate straits, as the Appellants themselves have conceded. Ontos had no revenue to speak of, it had substantial debts it could not pay, it could not make payroll on a regular basis, it was only surviving through loans from Vennworks and Vennworks had made it clear that Ontos could not rely on Vennworks continuing to act as Ontos' piggybank. If a transaction were not forthcoming

immediately, Ontos would have immediately failed and its creditors would have received nothing.

In September 2001, Firestar acquired ObjectSpark. The terms of the transaction provided that Firestar would pay Ontos $490,000 immediately in cash, give Ontos a $100,000 promissory note (since paid in full) and assume over $13 million in debt, which was comprised of loans payable to Vennworks or Amphion (the money that Vennworks and Amphion has loaned to Ontos over the preceding years). Both Ontos and Firestar were represented by counsel in the negotiations between them. The sale of ObjectSpark to Firestar was approved by Ontos' Board of Directors by a 3-0 vote. Neither Morley nor McCoy, who was also a former officer and employee of Ontos, opposed the transaction; both were members of the Board, and both abstained. Ontos used the proceeds from the sale to pay its employees' salaries and a great number of its trade creditors. The remaining proceeds were used to pay Ontos' continuing expenses – including the Appellants' salaries – for the next few months.

Shortly after Firestar's acquisition of ObjectSpark, Ontos was current on all of its obligations to the Appellants. Neither Appellant had any outstanding claim against Ontos for unpaid compensation.

Subsequent to the sale of ObjectSpark, the Appellants' only task was to try to sell Ontos' other software development program, "BrightRoad," for which they (principally McCoy) had been responsible for developing and marketing. Nonetheless, they were unable to find a buyer. Notwithstanding that they failed to locate a BrightRoad buyer, the Appellants continued to receive their salaries (Morley wrote the checks) through November 2001. It is only for the last few weeks of 2001 that they have contended in the State Court Action and in their proofs of claim filed with the Bankruptcy Court on April 2, 2004, that they have not been paid. In any

event, there was no point in continuing to operate Ontos, and the Appellants were discharged on or about January 8, 2002. The Appellants now contend, among other things, that they were not paid all the compensation due them under their employment agreements.

On or about June 18, 2002, the Appellants, former officers and employees of Ontos, commenced the State Court Action against the Appellees. *See Declaration of Kevin J. O'Connor*, Exhibit 14 (attaching complaint) ("Complaint"). In Count IV of the complaint, the Appellants alleged that the acquisition of ObjectSpark by Firestar was a fraudulent transfer under Massachusetts Uniform Fraudulent Transfer Act, Mass. Gen. Laws ch. 109A. Complaint at 11. Count VI of the complaint alleged that certain of the Appellees were liable to the Appellants as the "alter ego" of Ontos. *Id.* at 12.

In Count III of the complaint, the Appellants also asserted claims against certain of the Appellees for alleged violations of the Massachusetts Wage Claim Act, Mass. Gen. Laws ch. 149. *Id.* at 10. Count V of the complaint asserted a claim against Vennworks for fraud and deceit.[4] *Id.* at 11-12.

On January 8, 2004 (the "Petition Date"), Ontos filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, and Joseph G. Butler was appointed as Trustee.[5]

On or about April 2, 2004, the Appellants each filed a proof of claim with the Bankruptcy Court. Included as an attachment to each such proof of claim was a copy of the complaint in the State Court Action.

---

[4]  Counts I and II in the complaint were asserted solely against the Debtor and are not relevant to this dispute.

[5]  The Court may take judicial notice of matters reflected on the public docket in these proceedings.

On May 12, 2004, the Appellants filed a motion, which the Trustee did not oppose, seeking authority to proceed in the State Court Action against the Appellees on Counts III and V of the complaint (the Wage Act and fraud and deceit claims). The Bankruptcy Court entered an order on June 8, 2004, granting the Appellants' motion.

The Trustee subsequently investigated the Claims and received and analyzed submissions from both the Appellees and the Appellants. On March 11, 2005, the Trustee filed a *Stipulation by and between Chapter 7 Trustee and Vennworks, LLC, Amphion Ventures, LP, Firestar Software, Inc., Robert J. Bertoldi, Richard E. Morgan, and Kenneth Lord* (Bankruptcy Court Docket No. 29) (the "Stipulation") and the Motion to Approve.

On May 24, 2005, the Appellants filed their Objection. Shortly thereafter, on May 26, 2005, the Appellants filed their Motion to Proceed.

On June 20, 2005, each of the Trustee and the Appellees filed a response to the Objection and the Motion to Proceed.

After notice and a hearing conducted on June 29, 2005, with respect to the Trustee's Motion to Approve and the Appellants' Motion to Proceed, this Court entered the Bankruptcy Court Orders granting the relief requested in the Motion to Approve, overruling the Objection, and denying the relief requested in the Motion to Proceed.[6]

---

[6] The foregoing facts, as well as the Appellants' counter-statement of facts, were presented to the Bankruptcy Court in the parties' pleadings below and at the June 29, 2005 hearing on the Motion to Approve. In approving the Stipulation, the Bankruptcy Court adopted the view of the Trustee that the Stipulation was not unreasonable given the circumstances, including the Trustee's "due diligence" and "business judgment," and was in the best interest of the estate and its creditors. *See Transcript of Hearing On: (#29) Stipulation by Trustee, Joseph C. Butler; (#30) Motion to Approve Stipulation; (#53) Objection by Creditors Thomas McCoy and T. Mark Morley; (#54) Affidavit of Kevin O'Connor, Esq.; (#64) Response; (#57) Motion by Creditors McCoy and Morley for Order Authorizing Them to Proceed against Debtor's Solvent Co-Defendants; (#64) Objection by Trustee, Joseph C. Butler; (#66) Response by Firestar Software and Kenneth Lord before the Honorable William C. Hillman, J.U.S.B.C.* ("Transcript"), at 19.

On July 11, 2005, Morley filed a motion to withdraw counsel in order to represent himself with respect to future litigation in this case.  On the same date, Morley filed a notice of appeal and election to have the appeal heard before this Court, as well as a motion for stay pending appeal of the Bankruptcy Court Orders.  On July 20, 2005, the Appellees and the Trustee filed their joint opposition to the motion for stay pending appeal.  The Bankruptcy Court denied the relief requested in the stay motion by Endorsement Order dated August 11, 2005.

## Argument

A.      **The Bankruptcy Court Has Jurisdiction to Hear and Determine the Trustee's Motion to Approve and Related Stipulation.**

The Appellants attempt to convince this Court in the *Appellant Brief of Thomas J. McCoy and T. Mark Morley* (the "Appellants' Brief") that the Bankruptcy Court lacked jurisdiction to hear and determine the Trustee's Motion to Approve.  Appellants' Brief, at 14-22.  By focusing on whether the Bankruptcy Court has jurisdiction to hear and determine the merits of the Claims being compromised in the Stipulation, as opposed to whether the Bankruptcy Court has jurisdiction to hear and consider the Trustee's Motion to Approve, the Appellants put the cart before the horse, badly misconstruing the law with respect to the Bankruptcy Court's obvious jurisdiction.

As stated succinctly by the United States Bankruptcy Court for the Eastern District of Missouri in a case holding that an estate representative had the exclusive standing to compromise fraud and veil piercing claims:

> Bankruptcy courts have plenary power to determine the extent of the debtor's estate.   28 U.S.C. §§ 157(b) & 1334(a); *In re Continental Airlines*, 138 B.R. 442, 445 (D. Del. 1992).   Thus,

---

On appeal, the Appellants have apparently abandoned the argument that the Bankruptcy Court's decision with respect to the reasonableness of the Stipulation was erroneous or an abuse of discretion.

9

> bankruptcy courts have the authority to determine what causes of
> action belong to the debtor's estate and prevent all other entities,
> including entities that have not filed proof of claims, from
> prosecuting those causes of action when ruling on a debtor-in-
> possession's [or a chapter 7 trustee's] motion to compromise
> claims under Rule 9019. *Sobchack v. Am. Nat'l. Bank & Trust Co.
> (In re Ionosphere Clubs, Inc.)*, 17 F.3d 600, 607 (2d Cir. 1994).

*In re Bridge Information Systems, Inc.*, 325 B.R. 824, 830 (Bankr. E.D. Mo. 2005) (applying

Missouri law and holding that the estate representative alone could compromise a veil piercing

claim). *See also* 28 U.S.C. § 1334(e) ("The district court in which a case under title 11 is

commenced or pending shall have exclusive jurisdiction of all of the property, wherever located,

of the debtor as of the commencement of such case, *and of property of the estate*.") (emphasis

added); *see also* LR, D. Mass 201 (automatically referring cases arising under title 11 to the

bankruptcy court in accordance with 28 U.S.C. § 157(a)).

     Section 157(b) of title 28 provides a basis for the Bankruptcy Court's jurisdiction to hear

and determine the Motion to Approve.  Section 157(b)(1) provides that "Bankruptcy judges may

hear and determine all cases under title 11 and all core proceedings arising under title 11, or

arising in a case under title 11 . . . and may enter appropriate orders and judgments . . . ."  28

U.S.C. § 157(b)(1).  Core proceedings, within the meaning of 28 U.S.C. § 157(b)(2), include

"matters concerning the administration of the estate," and "other proceedings affecting the

liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship . . .

."  28 U.S.C. § 157(b)(2)(A) and (O).  Here, the Trustee's Motion to Approve and the related

Stipulation, approved by the Bankruptcy Court, directly involved matters concerning the

administration of the estate and the liquidation of the assets of the estate.  The Bankruptcy Court

had to determine whether the claims compromised in the Stipulation were property of the estate.

The result of such a finding had a direct and substantial impact on the size of the Debtor's asset

pool available for distribution to creditors of the estate.  The Motion to Approve and the related

Stipulation also adjusted the debtor-creditor relationship by compromising claims that the Trustee could have brought against the Appellees. *See Bridge Information Systems*, 325 B.R. at 827 (recognizing jurisdiction over the parties and subject matter jurisdiction under 28 U.S.C. §§ 1334, 151, and 157, and core proceeding jurisdiction under 28 U.S.C. § 157(b)(2)(A) when holding that trustee had exclusive standing to compromise fraud and veil piercing claims). Thus, it is abundantly clear that the Bankruptcy Court had jurisdiction to hear and determine the Motion to Approve as a core proceeding under 28 U.S.C. §§ 1334 and 157(b).[7]

**B.    The Fraudulent Transfer and Alter Ego Claims That the Appellants Assert in the State Court Action, and the Breach of Fiduciary Duty and Successor Liability Claims That the Appellants Assert They "May Have" against the Appellees, Are Property of the Estate under 11 U.S.C. § 541 Which the Trustee Has Exclusive Standing to Pursue and Compromise.**

---

[7]  The Appellants make additional faulty arguments that should be summarily dismissed. First, they argue that they did not consent to the jurisdiction of the Bankruptcy Court. Appellants' Brief, at 15. However, each of the Appellants filed a proof of claim with the Bankruptcy Court. Included as an attachment to each such proof of claim was a copy of the complaint in the State Court Action. In doing so, they have consented to the Bankruptcy Court's jurisdiction. *See Langenkamp v. Kulp*, 498 U.S. 42, 45 (1990) (noting that when "Respondents filed claims against the bankruptcy estate," they brought "themselves within the equitable jurisdiction of the bankruptcy court."). Second, they argue that the Bankruptcy Court "erred in refusing to remand" the proceeding to state court. Appellants Brief, at 17. The State Court Action, however, was never removed in the first instance. Accordingly, case law concerning remand is inapplicable. Third, the Appellants point to third-party, non-debtor discharge cases to argue that the Bankruptcy Court lacked jurisdiction to hear and determine the Motion to Approve and related Stipulation. Appellants Brief, at 18-20. However, the entire line of cases is wholly inapposite to the instant dispute. Each of the cases cited by the Appellants was decided in the context of whether a chapter 11 debtor could include a third-party, non-debtor discharge in its chapter 11 plan of reorganization. The courts uphold such extensions only in rare and exceptional circumstances. Here, the non-debtor release is part of a compromise on potential litigation against such non-debtors by the Trustee on behalf of the debtor and its estate. It is the combined effect of sections 541 and 362 of the Bankruptcy Code (or, alternatively, section 544 of the Bankruptcy Code, *see infra*) that precludes the Appellants from continuing to pursue the Claims in the State Court Action. Accordingly, the Appellants' arguments on these points should be summarily dismissed.

Paragraph 3 of the Stipulation approved by the Bankruptcy Court provides:

> The Trustee, in consideration of, *inter alia*, (i) the $50,000.00 to be
> paid by [the Appellees], and [the Appellees'] waiver and/or release
> of any right to distribution from the Trustee or the estate on any
> claim which any of them may have against the Debtor or the
> chapter 7 estate, the Trustee, *on his own behalf and on behalf of
> the Debtor and the Debtor's estate*, waives and/or releases any and
> all *claims that the Debtor or the Debtor's estate may have* against
> [the Appellees] arising out of or related to the conveyance by the
> Debtor of its ObjectSpark division to Firestar and *any and all
> claims that the Debtor or the Debtor's estate may have* against [the
> Appellees] arising out of or related to any claim that [the
> Appellees] used the corporate form of Ontos for fraudulent
> purposes, intermingled Ontos' corporate activities and interests
> with their own personal activities and interests such that there was
> no legal distinction between them, and that [the Appellees] are
> liable for the obligations of Ontos on any "alter ego," "piercing the
> corporate veil" or similar theory, including specifically, but not
> limited to, the claims set forth in Counts IV and VI of the
> complaint filed by Morley and McCoy which commenced the State
> Court Action.

Stipulation, at ¶ 3 (emphasis added).   The Appellants argue that the Trustee does not have

standing to settle fraudulent transfer, breach of fiduciary duty, successor liability and/or alter ego

claims that are expressly or impliedly waived and/or released in paragraph 3 of the Stipulation.

The Appellants are clearly wrong in this assertion.  Sections 541, 544 and 362 of the Bankruptcy

Code, as well as its goals and policies, provide that each of the Claims constitutes property of the

estate such that only the Trustee has standing to pursue and compromise.

It is well settled that a trustee has exclusive standing to prosecute state law claims that a

debtor had as of the commencement of the bankruptcy proceedings.  *See* 11 U.S.C. § 541;

*Feinman v. Lombardo*, 214 B.R. 260, 265 (Bankr. D. Mass. 1997) (bankruptcy trustee has the

*exclusive* standing to assert those state law claims that the debtor could have raised as of the

commencement of the bankruptcy proceedings); *DiStefano v. Stern (In re J.F.D. Enterpr., Inc.)*,

223 B.R. 610, 621 (Bankr. D. Mass. 1998) (cause of action seeking damages for harm to

corporation based on prepetition conduct of its directors or managers becomes "property of the estate" upon commencement of the corporation's bankruptcy case, and should be pursued by representative of estate, whether the trustee or debtor-in-possession).    As discussed in detail below, causes of action for fraudulent transfer, breach of fiduciary duty, successor liability and alter ego liability related to the allegedly wrongful transfer of the Debtor's property are considered property of the estate and thus fall firmly within this rule. *See, e.g., Kalb, Voorhis & Co. v. American Financial Corp.*, 8 F.3d 130, 132 (2d Cir. 1993); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700-01 (2d Cir. 1989); *Bridge Information Systems, Inc.*, 325 B.R. at 830 (applying Missouri law and holding that the estate representative alone could compromise a veil piercing claim); *Campana v. Pilavis (In re Pilavis)*, 233 B.R. 1, 3 (Bankr. D. Mass. 1999).  The Trustee also derives exclusive standing to pursue and/or compromise the alter ego claim by the power granted to him in section 544(a) of the Bankruptcy Code.    Therefore, the Trustee has the exclusive right to compromise the Claims, and the Bankruptcy Court Orders granting the Motion to Approve and denying the Motion to Proceed were correctly decided.  *See id.*

    1.    <u>The Trustee Has Exclusive Standing to Pursue and/or Compromise the Fraudulent Transfer Claims.</u>

A fraudulent transfer action related to transfer of a debtor's assets is among those claims that becomes property of the bankruptcy estate and is properly asserted by a trustee once a petition for relief has been filed.[8]  "Similarly, the right to recoup a fraudulent transfer, which

---

[8]   Moreover, notwithstanding the Appellants' argument that a fraudulent transfer action under 11 U.S.C. § 544 is a "new and independent Cause of Action" (Appellants Brief, at 23) from that of their fraudulent transfer claim, courts have recognized that section 544 "allows the bankruptcy trustee to step into the shoes *of a creditor* for the purpose of asserting causes of action under state fraudulent conveyance acts *for the benefit of all creditors*, not just those who win a race to judgment."  *American Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1275 (5th Cir. 1983) (holding that debtor retained an interest in property

outside of bankruptcy may be invoked by a creditor, is the property of the estate that only a trustee or debtor in possession may pursue, once a bankruptcy is under way." *Nat'l Tax Credit Partners, L.P. v. Havlik*, 20 F.3d 705, 708-9 (7th Cir. 1994). *See also Pilavis*, 233 B.R. at 3-4; *Feinman*, 214 B.R. at 260; *J.F.D. Enterprises, Inc.*, 223 B.R. at 610. The only limited circumstance in which creditors generally can have the right to assert such claims arises when an estate representative or debtor-in-possession refuses *unjustifiably* to do so. *Pilavis*, 233 B.R. at 3.

For example, in *Pilavis*, it was undisputed that the fraudulent transfer action became "property of the bankruptcy estate" when the debtor filed for relief. *Id.* at 3. The court authorized a judgment creditor to bring the avoidance action only because the trustee unjustifiably took no action to pursue or compromise the claims. *Pilavis*, 233 B.R. at 3-4.

The Appellants argue that *In re Cybergenics Corp.*, 226 F.3d 237 (3rd Cir. 2000), among other cases, supports their position that a fraudulent transfer action does not become property of the estate that only the Trustee has standing to pursue. The Appellants assert that the *Cybergenics* Court held that fraudulent transfer claims do not become property of the estate upon filing of a bankruptcy petition. However, the Court held no such thing. In *Cybergenics*, the issue was whether "certain fraudulent transfer claims arising from transfers made by Cybergenics Corporation were included in a sale of all assets of Cybergenics so as to foreclose its creditors from thereafter pursuing those claims on behalf of its bankruptcy estate." *Id.* at 239. Cybergenics was operating as debtor-in-possession, and after the asset sale, Cybergenics moved to dismiss the bankruptcy petition. Believing that the fraudulent transfer causes of action had been sold, Cybergenics chose not to pursue those causes of action. *See id.* Thereafter, the

fraudulently transferred, bankruptcy trustee alone could pursue action under [state] Fraudulent

creditors' committee objected to the motion for dismissal and sought leave to bring suit, *on behalf of the estate*, based on the fraudulent transfer claims. *See id.* at 240.

On appeal, the Third Circuit found that the fraudulent transfer claims were not "assets" of the debtor that could be sold, but in coming to that conclusion was careful to confirm that even though the fraudulent transfer actions were not "assets" of the debtor that could be sold, they were "property of the estate," such that the debtor-in-possession (or trustee) had the first right to assert such claims. *Id.* at 244. The Court stated:

> The District Court also concentrated on whether the fraudulent transfer claims were "property of the estate," a term of art under the Bankruptcy Code, *see* 11 U.S.C. § 541 (a), notwithstanding the fact that the sale order and sale agreement authorized the sale of all assets of Cybergenics, not all property of Cybergenics' bankruptcy estate. 'Cybergenics' assets' and 'property of the estate' have different meanings, evidenced in part by the numerous provisions in the Bankruptcy Code that distinguish between property of the estate and the property of the debtor, or refer to one, but not the other. *See also In re Doemling*, 127 B.R. 954, 957 (W.D. Pa. 1991) (Obviously, after the commencement of the case, the estate has an existence that is completely separate from that of the debtor.) Issues relating to property of the estate are simply not relevant to the inquiry into whether the fraudulent transfer claims in the Committee's complaint were assets of Cybergenics as debtor or debtor in possession.

*Id.* at 243-44. In other words, the fraudulent transfer claims *were the property of the estate* and the creditors' committee was only permitted to pursue them because the debtor-in-possession chose not to do so. *See also Pilavis*, 233 B.R. at 3-4. In that very limited circumstance, involving facts not present here, the creditors' committee was allowed to pursue the claims for the benefit of the estate. *Cybergenics*, 226 F.3d at 243-44; *Pilavis*, 233 B.R. at 3-4. Thus, it is clear that the Appellants continue to confuse property of the estate and property of the debtor

---

Transfer Act, and creditor-bank was prevented by automatic stay from continuing same).

when they assert that because the fraudulent transfer claims may not be the property of Ontos, they are entitled to assert them. *See Cybergenics*, 226 F.3d at 243-44.[9]

The fraudulent transfer claims that the Trustee compromised in this case are the property of the bankruptcy estate and the Trustee is the proper party to resolve any potential claim for fraudulent transfer on behalf of the Debtor's estate. *See Pilavis*, 233 B.R. at 3-4; *Havlik*, 20 F.3d at 708-09. Further, the Trustee has availed himself of the fraudulent transfer claims, has investigated the propriety of pursuing them further, and has chosen to compromise them on behalf of Ontos (and all unsecured creditors) in an effort to increase the size of the bankruptcy estate. As a result, the Appellants are barred by the automatic stay from further pursuing those claims. *Pilavis*, 233 B.R. at 3-4; *Cybergenics*, 226 F.3d at 243-44; 11 U.S.C. § 362.

Recently, the United States Bankruptcy Court for the Eastern District of Missouri addressed the Appellants' argument that the state-law fraudulent transfer actions belong to them and not the Trustee. *See Bridge Information Systems*, 325 B.R. at 830 (applying Missouri law and holding that the estate representative alone could compromise a veil piercing claim). Notwithstanding that a state-law fraudulent transfer action may have elements that differ from a fraudulent transfer action brought under section 548 of the Bankruptcy Code, the *Bridge* Court held that the "as long as the putative state law cause of action has the same focus as a fraudulent conveyance action under 11 U.S.C. § 548(b), only the trustee has standing to bring the claim." *Id.* (citing cases) (barring the creditors from pursuing claims that had a similar focus as a section 548 fraudulent transfer claim). Accordingly, the Bankruptcy Court did not commit reversible

---

[9] At any rate, *Cybergenics* gives no support to the Appellants' arguments, as the *Cybergenics* Court was addressing a claim to be asserted by the creditors' committee on behalf of all unsecured creditors, not any particular creditors, as Appellants argue.

error when it granted the Motion to Approve and denied the Motion to Proceed as it related to a compromise of the fraudulent transfer claims.

> 2.  The Trustee Has Exclusive Standing to Pursue and/or Compromise the Breach of Fiduciary Duty Claims.

In the Objection to the Motion to Approve, the Appellants asserted that they "might have" claims for breach of fiduciary duty against certain of the Appellees, although upon information and belief the Appellants have not formally asserted them in any court proceeding.[10] Objection, at 16 n.2.  Presumably, this alleged breach of duty is related to the same allegedly fraudulent transfer of the Debtor's asset that underlies all of Appellants' Claims.  The Appellants argue for the first time on appeal that there is a difference between a breach of fiduciary duty owing to the debtor corporation and a breach of fiduciary duty owing to creditors of its estate.  It is the breach of fiduciary duty to its creditors that the Appellants now argue the Trustee cannot compromise.  Despite a growing trend to recognize a fiduciary duty to creditors within the "zone of insolvency," a corporation or its officers and directors generally do not owe fiduciary duties to its creditors, and the Appellants have failed to support any such claim.

It is well settled that breach of fiduciary duty claims are within the purview of a trustee to pursue or compromise.  "It is clear that rights of action against officers, directors, and shareholders of a corporation arising from a breach of fiduciary duty, which can be prosecuted by the corporation directly or shareholders derivatively before the bankruptcy, become property of the estate [upon the filing of a petition for relief]. . . .  The trustee of a bankruptcy estate

---

[10]  The Appellants did not assert a breach of fiduciary duty claim in the State Court Action. Nonetheless, the Appellants argued in their Objection that the Trustee was precluded from settling any breach of fiduciary duty claims that the Appellants "*might have* against Ontos's solvent co-Defendants."  Objection, at 16 n.2 (emphasis added).  Because the Trustee believes that the Stipulation, *inter alia*, waives and releases the Appellees from any liability under a breach of fiduciary duty claim, the Trustee has briefed the Trustee's exclusive standing to pursue and compromise such claim.

succeeds to the right to bring an action for corporate mismanagement against directors or officers of the debtor corporation for the benefit of all creditors of the estate." *ANR Limited Inc. v. Chattin*, 89 B.R. 898, 901 (D. Utah 1988) (citing cases); *see Mixon v. Anderson (In re Ozark Restaurant Equipment Co., Inc.)*, 816 F.2d 1222, 1225 (8th Cir. 1987), *cert. denied* 484 U.S. 848 (1987) (recognizing the right of a trustee to pursue breach of fiduciary duty claims); *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1348 (7th Cir. 1987) *cert. denied*, 485 U.S. 906, 108 S.Ct. 147 (1987) ("It is axiomatic that the trustee has the right to bring any action in which the debtor has an interest, including actions against the debtor's officers and directors for breach of duty or misconduct . . . ."); *CBS, Inc. v. Folks (In re Folks)*, 211 B.R. 378, 387-88 (B.A.P. 9th Cir. 1997) (recognizing that a trustee has exclusive standing to assert a right of action for breach of fiduciary duty that is enforceable by the corporation or by a shareholder's derivative action before the bankruptcy petition is filed); *Ranalli v. Ferrari (In re Unifi Comm., Inc.)*, 317 B.R. 13 (D. Mass. 2004) (holding that trustee has standing to pursue breach of fiduciary duty claims against directors under deepening insolvency theory); *Brandt v. Hicks, Muse & Co., Inc. (In re Healthco Int'l, Inc.)*, 208 B.R. 288, 300 (Bankr. D. Mass. 1997) (trustee has standing to pursue breach of fiduciary duty claim belonging to the debtor). *See also Krol v. Wilcek (In re H. King & Assoc.)*, 295 B.R. 246, 266-67 (Bankr. N.D. Ill. 2003) (same).

Regardless of whether the alleged breach of fiduciary duty was to the corporate debtor or to a creditor thereof, numerous courts have held that such an action belongs to creditors as a whole, barring individual creditors from bringing actions or asserting claims of the kind the Appellants are attempting to pursue in the State Court Action or otherwise. *See, e.g.*, *In re Van Dresser Corp.*, 128 F.3d 945 (6th Cir. 1997) (creditor could not bring suit against debtor's bank, its officer and president of debtor's subsidiary corporation alleging that they had bilked parent

and its subsidiary out of funds causing subsidiaries and parent to file bankruptcy, as such claim was derivative of harm to the company as a whole and therefore belonged to the estate); *In re Ionosphere Clubs, Inc.*, 17 F.3d at 604 (claims against former officers and directors for breach of fiduciary duty and tortious interference with contract were estate property); *St. Paul Fire*, 884 F.2d at 700-02 (guarantor of debtor's bonds lacked standing to bring an independent action against corporate parent alleged to have stripped the debtor of assets as action was estate property); *Delgado Oil Co. v. Torres*, 785 F.2d 857, 861-62 (10th Cir. 1986) (after a corporation's bankruptcy, its creditor could not sue director for unlawful preferential payments and breach of fiduciary duty, as action was vested solely with debtor-in-possession). These cases confirm that the Trustee has exclusive standing to compromise the breach of fiduciary duty claims and the Appellants are stayed from further pursuing such claims in the State Court Action or otherwise. Accordingly, the Bankruptcy Court did not commit reversible error when it granted the Motion to Approve and denied the Motion to Proceed as it related to any breach of fiduciary duty claims that are waived and released in the Stipulation.

      3.    <u>The Trustee Has Exclusive Standing to Pursue and/or Compromise the Successor Liability Claims.</u>

Courts have recognized that a trustee has standing to pursue successor liability claims on behalf of the estate. *See, e.g., Krol*, 295 B.R. at 266-67 (holding that trustee could bring deprivation of corporate opportunity, breach of fiduciary duty, and corporate successor liability causes of action held previously by the debtor and on behalf of all creditors, characterizing such claims as general and expressly holding that they were not personal claims of a specific creditor). Successor liability furnishes a means for a plaintiff to reach a second, successor corporation upon a debt or liability that existed originally against the predecessor corporation. *See generally,* 19 Am.Jur. 2d *Corporations* §§ 2300 to 2347; 63 Am.Jur. 2d *Products Liability* §§ 116 to 139. The

general rule is that where a corporation sells its assets to another company, the new company is

*not* liable for the debts and liabilities of the old company merely by reason of its succession.  19

Am.Jur. 2d at § 2319 (citing *Devine & Devine Food Brokers, Inc. v. Wampler Foods, Inc.*, 313

F.3d 616 (1st Cir. 2002) (applying Massachusetts law); 63 Am.Jur. 2d at § 116.  This rule of

successor corporate *non*liability developed within the framework of corporate and tax law as a

response to the need to protect bona fide purchasers from unassumed debt liability, and was

designed to maximize the fluidity of corporate assets.  19 Am.Jur. 2d at § 2319 (citing *Vernon v.*

*Schuster*, 688 N.E. 2d 1172 (Ill. 1997)); 63 Am.Jur. at § 116.

Four exceptions to this general rule exist, however, including instances where there is an

express or implied agreement of assumption; where the transaction amounts to a merger or

consolidation of the purchaser and seller companies (a "*de facto* merger"); where the purchaser is

merely a continuation of the seller; and where the transaction is for the fraudulent purpose of

escaping liability for the seller's obligations.  *Id.* at § 2320.  The four exceptions were developed

principally to protect creditors and minority shareholders, but have expanded to include

protection for tort victims.  63 Am.Jur. 2d at § 116 (citing *George v. Parke-Davis*, 733 P.2d 507,

510 (Wash. 1987)).  The *de facto* merger doctrine, for instance –

> developed as a judicial reply to situations in which an assets
> transaction resulted in the transferor corporation being financially
> incapable of satisfying the claims of its creditors or the victims of
> its torts . . . .    Later, the doctrine was expanded to cover the
> question of the appraisal rights of dissenting shareholders with
> respect to an assets transaction.    More recently, it has been
> successfully used as a basis for recovering damages from
> transferee corporations in products liability actions.

*Id.* at § 2300.  Here, the underlying harm giving rise to successor liability allegations arise from

purported tort liability for fraudulent transfer and possible breaches of fiduciary duty.  Like the

alter ego and veil piercing claims discussed below, the successor liability claims have as their

foundation tort claims of fraudulent transfer and breach of fiduciary duty that only the Trustee

has the power to pursue and compromise. *See Bridge Information Systems*, 325 B.R. at 835-36

(holding that veil piercing claim stemming from an alleged avoidable transfer is property of the

estate under 11 U.S.C. § 541(a) that only the estate representative may prosecute).

4.    The Trustee Has Exclusive Standing to Pursue and/or Compromise the Alter Ego Claims.

There is no controlling bankruptcy authority in Massachusetts deciding whether the

Trustee has the exclusive right to prosecute alter ego claims on behalf of the estate.  However,

the overwhelming weight of authority outside of the First Circuit holds that the Trustee has

exclusive standing to pursue and compromise such claims.  Numerous courts have held, based on

various state laws and federal bankruptcy goals and policies, that a Trustee is the proper party to

assert alter ego claims. *See St. Paul Fire & Marine*, 884 F.2d at 700-05 (a general claim,

resulting in no particularized injury, which could be brought by the debtor or any creditor, must

be asserted by the trustee and is binding on all creditors); *Steyr-Daimler-Puch of America Corp.*

*v. Pappas*, 852 F.2d 132, 135, 136 (4th Cir. 1988); *Koch Refining*, 831 F.2d at 1343-37; *S.I.*

*Acquisition, Inc. v. Eastway Delivery Service, Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142,

1153 (5th Cir. 1987) (holding that creditor's action against nonbankrupt defendants, based on

remedy of alter ego under Texas law, belonged to debtor and, as such, was "property of the

estate" within meaning 11 U.S.C. § 541 to which automatic stay applied)[11]; *In re Kaiser*, 791

F.2d 73 (7th Cir. 1986) (trustee could bring alter ego claim under Wisconsin law); *Folks*, 211

B.R. at 387-88 (holding that trustee had exclusive standing to maintain an alter ego action to

---

[11]  In addition, the *S.I. Acquisition* Court noted that its decision furthered a policy underlying the Bankruptcy Code because, if the creditor's alter ego action were not stayed, it would "promote the first-come-first-served unequal distribution dilemma that the Bankruptcy Code . . . sought to prevent." *Id.* at 1153-54.

recover for direct injuries to debtor or general injuries to creditors under either 11 U.S.C. §§ 541 or 544); *Bridge Information Systems*, 325 B.R. at 835-36 (holding that veil piercing claim stemming from an alleged avoidable transfer are property of the estate under 11 U.S.C. § 541(a) that only the estate representative may prosecute); *Tsai v. Buildings by Jamie, Inc. (In re Buildings by Jamie, Inc.)*, 230 B.R. 36, 43-44 (Bankr. D.N.J. 1998) (holding that alter ego and veil piercing theories of liability were general claims of creditors under New Jersey law providing the trustee with exclusive standing to pursue such claims under 11 U.S.C. §§ 541 and 544); *Stamps v. Knoblach (In re City Communications, Ltd.)*, 105 B.R. 1018, 1020 (Bankr. N.D. Ga. 1989); *contra ANR Limited, Inc. v. Chattin*, 89 B.R. 898 (D. Utah 1988) (holding that alter ego claims may constitute either personal or general claims under Utah law, but bankruptcy policy of equitable distribution prevented particular creditor from bringing such claim, absent trustee abandonment).

Where, as here, the injury is general, and the alter ego claim will (or potentially will) increase the value of the estate, the vast majority of courts have held that the trustee is the proper (and exclusive) party with standing to assert the claim in a bankruptcy context.[12] *See St. Paul Fire & Marine*, 884 F.2d at 700 (applying Ohio law); *Pappas*, 852 F.2d at 135-36 (under Virginia law, an alter ego claim belongs to the corporation and thus is property of the bankruptcy estate and properly asserted by the bankruptcy trustee); *Koch Refining*, 831 F.2d at 1342-43 (under Illinois, Indiana and Wisconsin law, alter ego claims that involve a bankrupt corporation must be asserted by the trustee in the bankruptcy court); *S.I. Acquisition, Inc.*, 817 F.2d at 1152-

---

[12] The alter ego claims are undoubtedly general in nature. Appellants contend that Ontos' majority shareholders, Vennworks and Amphion, engineered the transfer of ObjectSpark to Firestar in order to further their own aims and to strip Ontos of assets and thus frustrate Ontos' creditors, including them. Any liability for such action, however, would inure to the benefit of all of Ontos' creditors, not just the Appellants.

53 (the bankruptcy trustee has exclusive standing to assert veil-piercing claims on behalf of a

bankrupt corporation because such claims are not barred under Texas law and under bankruptcy

principles become property of the estate); *Pereira v. Cogan*, 265 B.R. 32, 35 (S.D.N.Y. 2001)

(under Delaware law, trustee has exclusive standing to bring alter ego claims of debtor);

*Gosconcert v. Hillyer*, 158 B.R. 24, 28-29 (S.D.N.Y. 1993) (applying New York law); *City

Communications, Ltd.*, 105 B.R. at 1022 ("Where the alter ego action is an attempt to collect

property for the benefit of all creditors and is not personal to any particular creditor, the trustee

should have standing to maintain the action."); *contra Williams v. California 1st Bank,* 859 F.2d

664 (9th Cir.1988) (trustee as assignee of *specific* creditors' claims lacked standing, for non-

assigning creditors were denied participation in the distribution and trustee was not acting for the

benefit of the estate).

　　In coming to this conclusion, the Courts draw a clear distinction between alter ego claims

in and out of the bankruptcy context.  In *Koch Refining*, the Seventh Circuit firmly rejected the

argument advanced by the Appellants that alter ego claims belong to creditors as "reflect[ing] a

basic misunderstanding of the trustee's role in bankruptcy."  831 F.2d at 1342-43.  The Court

held that "[i]t is axiomatic that the trustee has the right to bring any action in which the debtor

has an interest, including actions against the debtor's officers and directors for breach of duty or

misconduct."  *Id.  See also S.I. Acquisition, Inc.*, 817 F.2d at 1152-53; *City Communications,

Ltd.*, 105 B.R. at 1022.

　　There are two basic approaches to the question of whether a trustee may assert alter ego

claims involving a bankrupt corporation.  The first line of analysis includes consideration of

applicable state law.  Under the general standard in this area, and alter ego claim may be asserted

by a trustee if (a) under governing state law the debtor could have asserted an alter ego claim to

pierce its own corporate veil; and (b) the claim is a general one, of the type that could be brought by any creditor of the debtor. *See, e.g., Kalb, Voorhis & Co.*, 8 F.3d at 132; *see also St. Paul Fire & Marine*, 884 F.2d 688 at 700-01. If there is specific state law allowing such claims, that conclusion controls and such claims are property of the estate. Conversely, if state law specifically prohibits such claims, they may not be asserted by a trustee.

In the absence of a specific state law prohibition against assertion of alter ego claims on behalf of the corporation, courts typically follow the second line of analysis and find that state law would allow such actions in a bankruptcy context to further the goals of bankruptcy. The trustee is the logical and proper party to be allowed to assert such claims as an equitable remedy for the benefit of the estate. *See St. Paul Fire & Marine*, 884 F.2d at 701 (Congress intended to protect all creditors by making the trustee the proper person to assert such common claims and bind the creditors by the outcome of his actions); *see also Kalb, Voorhis & Co.*, 8 F.3d at 133; *S.I. Acquisition*, 817 F.2d at 1152-53; *Pereira*, 265 B.R. at 35. Preventing creditors from bringing claims that belong to the estate as a whole serves important policy interests. "The Trustee's single effort eliminates the many wasteful and competitive suits of individual creditors." *Koch Refining*, 831 F.2d at 1342-43. As the Court noted in *Nat'l Am. Ins. Co. v. Ruppert Landscaping Co.*, 187 F.3d 439 (4th Cir. 1999):

> Reserving the action for the Trustee maintains the integrity of the bankruptcy proceeding and ensures that individual creditors cannot hijack the bankruptcy process. If it were otherwise there would be a 'multi-jurisdictional rush to judgment whose organizing principal could only be first-come first-served.'

*Id.* at 442 (quoting *MortgageAmerica Corp.*, 714 F.2d at 1274). Allowing an individual creditor to pursue recoveries that belong to the estates as a whole would disadvantage the remaining creditors. *Id.*

A bankruptcy trustee represents not only the rights of the debtor, but also the interests of all the creditors, including the right to sue parties for recovery to be available to the estate. *See St. Paul Fire & Marine*, 884 F.2d at 697; *see also Chattin*, 89 B.R. 898 (holding that alter ego claims may constitute either personal or general claims under Utah law, but bankruptcy policy of equitable distribution prevented particular creditor from bringing such claim, absent trustee abandonment). As the Third Circuit held, "it may seem strange to allow a corporation to pierce its own veil," but in the bankruptcy context it a is a tool for the protection of creditors and advances the doctrine of allowing a debtor corporation to pursue claims to increase its estate. *See Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1240 n.20 (3rd Cir. 1994).

The case cited by the Appellants, *In re Ipswich Bituminous Concrete Prods. Inc.*, 79 B.R. 511 (Bankr. D. Mass. 1987), demonstrates the applicability of this latter analysis.[13] Although cited by the Appellants in support of their contention that alter ego claims do not belong to the Trustee, it holds no such thing and highlights exactly why the Trustee should have exclusive standing to pursue or compromise the alter ego claims. The *Ipswich Bituminous* Court found that there is no definitive answer in Massachusetts to the question as to whether a corporate entity can pierce its own veil, which logically means that there is no specific state law *barring* such a claim on behalf of the debtor corporation. *Id.* at 520. The Court was not "convinced a judgment against [the individual defendants on the alter ego count] was required," but the court also was not convinced that such judgment would not have been warranted. *See id.* Seemingly, the court

---

[13]  In addition to *Ipswich Bituminous*, the Appellants cite four Massachusetts state cases. None of the four cases, which are cited for the proposition that "creditors" routinely bring alter ego claims, is decided in a bankruptcy context. Appellants' Brief at 37. It is not in dispute whether creditors may bring such claims where the corporation involved is not in bankruptcy, and these cases are thus irrelevant. The issue here is whether a bankruptcy trustee has exclusive standing to control such claims.

did not delve into the issue because it was already holding the individual defendants jointly and severally liable based on other causes of action. *See id.*

Because Massachusetts law is silent on the issue, this Court should follow the second analysis, which involves a review of the Bankruptcy Code's goals and policies of maximizing the value of the estate for the benefit of all creditors. As the Courts have stated, Bankruptcy policy weighs in favor or granting to the trustee exclusive standing to pursue and compromise such claims. *See, e.g., St. Paul Fire & Marine*, 884 F.2d at 700-01. Accordingly, this Court should affirm the Bankruptcy Court Orders that held that the Trustee has exclusive standing to pursue and/or compromise the alter ego claims that the Appellants assert in the State Court Action against certain of the Appellees.[14]

5.    The Trustee Also Derives Exclusive Standing to Pursue and/or Compromise the Alter Ego Claims Pursuant to Section 544 of the Bankruptcy Code.

As the Trustee has argued to the Bankruptcy Court, the Trustee also derives exclusive standing to pursue and/or compromise the alter ego claims under section 544 of the Bankruptcy Code. *See Response to T. Mark Morley and Thomas J. McCoy's Objection to the Motion by the*

---

[14]    Moreover, one commentator has explained, "[a] finding of fact of alter ego, standing alone, creates no cause of action. It merely furnishes a means for a complainant to reach a second corporation or individual upon a cause of action that otherwise would have existed only against the first corporation. An attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract." William Fletcher, *Fletcher Cyclopedia of Private Corp.*, § 41.10 (citations omitted). *See Bridge Information Systems*, 325 B.R. at 835-36 (holding that "as long as the putative state law cause of action has the same focus as a fraudulent conveyance action under 11 U.S.C. § 548(b), only the trustee has standing to bring the claim"); *In re Vermont Toy Works, Inc.*, 82 B.R. 258, 300-09 (Bankr. D. Vt. 1987) ("Piercing the corporate veil and alter ego actions against a corporation's sole shareholder-director and guarantor are actually constituents of the larger cause of action for breach of fiduciary duty since each of these actions involves an equitable infraction of the duty owed toward the corporation, and, in some cases, others."). Thus, because it is well settled that the Trustee can pursue and compromise breach of fiduciary duty and fraudulent transfer claims, it follows that the only the Trustee has standing to pursue and compromise the alter ego claims which are founded on the same allegedly wrongful transfer of the Debtor's asset that lies at the core of all of Appellants' putative claims.

*Trustee for Approval of Stipulation and Opposition to Motion for Leave to Pursue Claims* (Bankruptcy Docket No. 66), at 7 n.2. *See also* Prof. Ralph Brubaker, *Piercing the Corporate Veil of a Bankruptcy Debtor: Distinguishing the Bankruptcy Estate's Distinctive Roles as Successor to the Debtor and As "Super Creditor,"* in *Bankruptcy Law Letter*, 8 (Vol. 25, No. 9, September 2005) ("Brubaker"). Under section 544(a)(1) and (2) of the Bankruptcy Code, the trustee asserts rights of a hypothetical creditor through the "strong-arm power." Brubaker, at 8. Similar to successor causes of action under section 541(a)(1), if a creditor cause of action is vested in the bankruptcy estate under section 544, this will preclude individual creditors from prosecuting the action postpetition. *Id.* (citing *MortgageAmerica Corp.*, 714 F.2d at 1275-76 (holding that section 362 "prevents a creditor from continuing to pursue a cause of action under the [state] Fraudulent Transfer Act after a petition for bankruptcy has been filed."). This is not based on a property of the estate argument, but focuses on the power of the trustee to bring claims of creditors generally.

Unlike section 544(b) of the Bankruptcy Code, section 544(a) is not limited to an avoidance remedy and is much more comprehensive:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, *the rights and powers of, or may avoid* any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [or]
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists . . . .

Brubaker, at 8-9 (emphasis added) (quoting 11 U.S.C. § 544(a)). This language makes clear that, "in addition to giving the trustee a hypothetical petition-date creditor's right to avoid the debtor's prepetition transfers and obligations, it also gives the trustee the 'rights and powers' of [a] hypothetical petition-date creditor. Thus, if a hypothetical creditor that extended credit to the corporate debtor on the petition date would have the 'right' and the 'power' to bring an alter ego action against shareholders to recover that debt, § 544(a)(1)-(2), by its terms, would appear to give the debtor's bankruptcy trustee . . . the same 'right' and 'power' to bring an alter ego action against those same shareholders on behalf of all unsecured creditors." *Id.* at 9. In line with these provisions, the Trustee has the exclusive authority under his "strong-arm power" in section 544(a) of the Bankruptcy Code to assert alter ego claims of creditors. *See Koch Refining*, 831 F.2d at 1342-49.

Although the Appellants cite cases holding that the trustee has no power under section 544 of the Bankruptcy Code to assert general creditor alter ego actions on behalf of the estate's creditors, a close review of those cases reveals that individualized, creditor claims personal to that creditor and not general creditor claims were asserted. *See, e.g., Caplin v. Marine Midland Grace Trust Co. of New York*, 406 U.S. 416 (1972); *Steinberg v. Buczynski*, 40 F.3d 890 (7th Cir. 1994) (alter ego remedy premised upon an individualized injury to a particular shareholders); *Ozark Restaurant*, 816 F.2d at 1226-28 (following *Caplin*). For instance, *Caplin*, a case under Chapter X of the Bankruptcy Act, merely stands for the general proposition that a trustee cannot bring a claim that is individualized to a particular creditor or group of similarly situated creditors. *Id.* at 430. In *Caplin*, a reorganization trustee attempted to assert a claim on behalf of debenture holders against an indenture trustee for failure to maintain required asset-liability ratios under the indenture. In concluding that the trustee did not have standing to assert such a claim, the

Supreme Court noted that the duty that the indenture trustee was said to have breached ran to third parties – the debenture holders. *Id.* at 429. The Court reasoned that the trustee had only the right to pursue property of the estate and had no right to "collect money not owed to the estate." *Id.* at 428-29. The Court found that the claim was in the nature of a personal creditor action, unique to the bondholders of that particular bond issue. *Id.*

Because the alter ego claim that the Appellants assert against the Appellees is in the nature of a general creditor claim, interpreting section 544(a) to empower the Trustee with exclusive standing distinguishes the instant case from that in *Caplin*. *See* Brubaker, at 13 (quoting *Koch Refining*, 831 F.2d at 1348). The alter ego claims are undoubtedly general in nature. Appellants contend that Ontos' majority shareholders, Vennworks and Amphion, engineered the transfer of ObjectSpark to Firestar in order to further their own aims and to frustrate Ontos' creditors. Any liability for such action, however, would inure to the benefit of all of Ontos' creditors, not just the Appellants. As a result, the Trustee's strong-arm powers under section 544(a) of the Bankruptcy Code provides an alternative source of exclusive standing to pursue and compromise the alter ego claims. Accordingly, this Court should affirm the Bankruptcy Court Orders that held that the Trustee has exclusive standing to pursue and/or compromise the alter ego claims that the Appellants assert in the State Court Action.

## **Conclusion**

For the foregoing reasons, the Trustee respectfully requests that this Court affirm the Bankruptcy Court Orders granting the Motion to Approve and denying the Motion to Proceed, and that the Appellees be awarded costs related to this appeal.

JOSEPH G. BUTLER, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF THE ESTATE OF ONTOS, INC.

By his attorneys,

/s/ Joseph G. Butler
Joseph G. Butler (BBO #544284)
BARRON & STADFELD, P.C.
100 Cambridge Street
Suite 1310
Boston, MA  02114
Tel:    (617) 723-9800

Dated:  October 24, 2005

## CERTIFICATE OF COMPLIANCE WITH F.R.A.P. 32(a)(7)

In compliance with F.R.A.P. 32(a)(7), I, Joseph G. Butler, hereby certify that based upon the word count of the word processing system used to prepare this brief, Microsoft Word, the foregoing brief contains 10,176 words.


/s/ Joseph G. Butler
Joseph G. Butler (BBO #544284)


## CERTIFICATE OF SERVICE

I, Joseph G. Butler, hereby certify that on October 24, 2005, I caused a copy of the foregoing document to be served, via first class mail, postage prepaid, on those parties listed below.

T. Mark Morley, Esq.
30 Deerpath Road
Dedham, MA  02026
(*Counsel to T. Mark Morley and Thomas McCoy*)

Harold B. Murphy (BBO #326610)
Christian J. Urbano (BBO #644471)
HANIFY & KING
Professional Corporation
One Beacon Street
Boston, MA  02108
(*Counsel to Firestar Software, Inc. and Kenneth Lord*)

Eric P. Heichel, Esq.
Eiseman Levine Lehrhaupt &
  Kakoyiannis, P.C.
845 Third Avenue
New York, NY  10022
(*Counsel to Firestar Software, Inc.,  Kenneth Lord, Vennworks, LLC, Amphion Ventures, Robert J. Bertoldi, and Richard C.E. Morgan*)


Dated: October 24, 2005                    /s/ Joseph G. Butler
                                           Joseph G. Butler (BBO #544284)