UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Appeal Nos. 05-11708-RGS and 05-11710-RGS

IN RE ONTOS, INC.

Bankruptcy No. 04-10157

Chapter 7

On Appeal from Orders of the United States Bankruptcy Court
for the District of Massachusetts (Eastern Division)
(Hon. William C. Hillman, United States Bankruptcy Judge)

February 3, 2006

STEARNS, D.J.

This is an appeal of two orders entered by the Bankruptcy Court (Hillman, J.) on

June 29, 2005.  Appellants Mark Morley and Thomas McCoy appeal the allowance of a

motion approving a stipulation of settlement and release entered with the defendant-

appellees by the Bankruptcy Trustee for the estate of Ontos, Inc.[1]  The release

extinguishes certain state law claims asserted by appellants in a suit brought in Essex

Superior Court.  Appellants also appeal the denial of their cross-motion for permission to

prosecute the released claims in the state court action.  Appellants complain that Judge

Hillman exceeded his jurisdictional authority and abused his discretion in approving the

settlement.  Appellants filed a timely notice of appeal.

ISSUES ON APPEAL

Appellants' brief does not state the matters appealed with any precision.  The

statement of issues is adapted from the brief of the Trustee and the arguments made at

---

[1]The defendant-appellees are Vennworks, LLC, Amphion Ventures, Firestar
Software, Inc., Robert Bertoldi, Richard Morgan, and Kenneth Lord.

the hearing before Judge Hillman.[2]  The court identifies the following as the issues to be decided on appeal.

> (1) Did the Bankruptcy Court have jurisdiction to hear and determine the Trustee's motion to approve the stipulation of settlement and release? (2) Is the fraudulent transfer claim brought by appellants in the state court property of the estate within the meaning of 11 U.S.C. § 541?  (3) Did the Bankruptcy Court abuse its discretion in approving the stipulation of settlement and release?

## BACKGROUND

Ontos was incorporated in Delaware in 1987.  Ontos developed internet software and provided technology consulting services.  In the mid-1990s, Ontos invented an Internet-related technology to support object-oriented data management. The associated software was named "ObjectSpark."  Ontos was not profitable and depended on bridge loans from its majority shareholders, Vennworks and Amphion, to pay operating expenses. In 2000, the Ontos Board of Directors considered selling ObjectSpark as a means of raising capital.

 Kenneth Lord became the Chief Executive Officer (CEO) of Ontos in the late spring of 2001.  His principal task as CEO was to find a purchaser for ObjectSpark.  When by September of 2001, no buyer had materialized, Lord caused a company he had formed, Firestar Software, Inc., to submit an offer.  Ontos and Firestar were represented by separate counsel in the ensuing negotiations.  An agreement to sell ObjectSpark to

---

[2]When asked to frame the issue at the hearing before this court, appellant Morley (a member of the bar appearing pro se to argue the appeal) responded that the Trustee had "no legal authority to settle [appellants'] claims."

Firestar was eventually approved by the Ontos' Board by a 3-0 vote. Morley and McCoy, who were officers of Ontos and members of the Board, were present at the discussion but abstained on the vote. Firestar gave Ontos $490,000 in cash and a promissory note for an additional $100,000 (which was ultimately paid in full). Firestar also assumed approximately $13 million of Ontos' debt (most of which consisted of the loans from Vennworks and Amphion). Ontos used the proceeds of the sale to pay employee salaries (including those of the appellants) and debts owed to trade creditors.

On January 8, 2002, McCoy and Morley were terminated by Ontos. On June 18, 2002, they jointly brought a lawsuit in Essex Superior Court against Ontos and the defendant-appellees seeking payment of lost wages and severance benefits. In separate counts, the Complaint alleged breach of contract, breach of the covenant of good faith and fair dealing, violation of the Massachusetts Wage Act, fraud and deceit, fraudulent transfer, breach of fiduciary duty, and alter ego liability. With respect to the latter three claims, which are at the heart of the present appeal, McCoy and Morley allege that the appellees stripped Ontos of its most valuable asset (ObjectSpark) by selling it at less than fair market value and then using the proceeds "as they saw fit." According to appellants, Firestar was simply a "continuation" or alter ego of Ontos with Lord serving as its CEO, and its staff composed entirely of former Ontos employees using Ontos' equipment to exploit Ontos' intellectual property.[3]

---

[3]It should be noted that the litigation was instituted by McCoy and Morley not as a derivative action on behalf of Ontos but as an individual capacity suit seeking redress for

3

After eighteen months of litigation in the state court, on January 8, 2004, Ontos filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Joseph Butler was appointed by the Bankruptcy Court as the Trustee. On April 2, 2004, McCoy and Morley filed proofs of claim together with copies of their state court Complaint. Appellants consider themselves to be general creditors of Ontos because of the lost wages and employment benefits. On May 12, 2004, McCoy and Morley sought approval from the Bankruptcy Court to proceed in state court against the appellees on the Wage Act and fraud and deceit claims. The Bankruptcy Court gave its permission on June 8, 2004.

On March 11, 2005, the Trustee filed the motion to approve the stipulation of settlement and release. Over appellants' objection, the Bankruptcy Court on June 29, 2005, allowed the Trustee's motion. Paragraph 3 of the stipulation provides:

> [t]he Trustee, in consideration of, *inter alia*, (i) the $50,000.00 to be paid by [the Appellees], and [the Appellees'] waiver and/or release of any right to distribution from the Trustee or the estate on any claim which any of them may have against the Debtor or the chapter 7 estate, the Trustee, *on his own behalf and on behalf of the Debtor and the Debtor's estate*, waiver and/or releases any and all *claims that the Debtor or the Debtor's estate may have* against [the Appellees] arising out of or related to the conveyance by the Debtor of its ObjectSpark division to Firestar and *any and all claims that the Debtor or the Debtor's estate may have* against [the Appellees] used the corporate form of Ontos for fraudulent purposes, intermingled Ontos' corporate activities and interests with their own person activities and interests such that there was no legal distinction between them, and that [the Appellees] are liable for the obligations of Ontos on any "alter ego," "piercing the corporate veil" or similar theory, including specifically, but not limited to,

personal wrongs.

4

the claims set forth in Counts IV and VI of the complaint filed by Morley and McCoy which commenced the State Court Action.

In the argument before the Bankruptcy Court, the Trustee (supported by the appellees) argued that he had the exclusive right to compromise the fraudulent transfer and alter ego claims because they constitute property of the estate within the meaning of section 541(a) of the Bankruptcy Code or, alternatively, because they could have been asserted at his discretion for the benefit of Ontos' creditors pursuant to section 544.[4] McCoy and Morley for their part argued that the Trustee lacked standing under either provision of the Code.    Alternatively, McCoy and Morley objected to the Trustee's agreement to give a release of claims that they value in excess of $1 million for a "mere" $50,000.

After hearing argument, the Bankruptcy Court ruled orally on both the Trustee's motion to approve the settlement and appellants' cross-motion for permission to proceed against appellees on the compromised claims in state court. Judge Hillman explained his rulings as follows.

> As to the motion to allow Morley and McCoy to proceed against the solvent co-defendants, that depends on what I consider to be the nature of their claims, the alter ego claims and the other claims.  I'm not sure that I agree 100 percent with Mr. Butler that these alter ego claims are merely a remedy, but I do believe that alter ego and related claims are certainly derivative from any liability that is owed to the debtor here; and being derivative, I believe that they are the Trustee's property and not that of the individual defendants

---

[4]The Trustee did not purport to compromise the "personal" state law claims asserted by the appellants for violation of the Wage Act and fraud and deceit.  These claims remain pending against the appellees in the Superior Court.

5

– individual plaintiffs against those other people.

Indeed, that's consistent with the whole bankruptcy concept, which is to take all of the goodies and divide them equitably between everybody, and nobody gets an individual piece of the action, and so I'm going to deny the motion to allow Morley and McCoy to continue their state court action against the other defendants.

As to the approval of the stipulation, this has got to be the most amorphous thing on earth. I don't know if any of the counsel that are present here today were here on another case I had a couple of years ago, and the question was the value of the intellectual property, and we had two experts in. They were experts, and one said the software was worth 200 million dollars, . . . and the other expert said it was worth zero; and they were both right, assuming the assumption on which they based their opinions: Is it today's software or yesterday's software?

Well, I can't make that call. I'm not sure anybody can make that call. We've got a highly experienced Trustee who has done such due diligence as is reasonable under the circumstances. It's not as if the software was given away. There was money for it. I can't say that the Trustee is wrong in wanting to settle the claims for the amount of money he's been offered, and the usual rule is that absent anything that raises my eyebrows, my hackles, or disturbs my stomach, I will go with the Trustee's business judgement, and none of those negative factors are present here.

The motion to approve the stipulation is granted.

June 29, 2005 Hearing Tr., at 17-19.

On July 11, 2005, appellants filed a notice of appeal and an election to have the appeal heard in the district court. They also sought a stay pending appeal. The Bankruptcy Court denied the stay request on August 11, 2005. After the appeal was fully briefed, the court on February 1, 2006, heard oral argument.

<u>DISCUSSION</u>

"The district courts of the United States shall have jurisdiction to hear appeals . . .

6

from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [ 28 U.S.C. § 157]."   28 U.S.C. § 158(a)(1). On an appeal to the district court, rulings of law by the Bankruptcy Court are reviewed *de novo*, while findings of fact are accepted unless clearly erroneous.  Fed.R. Bankr.P. 8013.  See Intrex, Inc. v. Commissioner, 321 F.3d 55, 58 (1st Cir. 2003); In re Healthco Int'l, Inc., 132 F.3d 104, 107 (1st Cir. 1997).  Equitable orders of the Bankruptcy Court are reviewed for abuse of discretion.  Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 30 (1st Cir. 1994).  It is the latter standard that governs here.  If the Bankruptcy Court had jurisdiction to entertain the Trustee's motion to approve the stipulation of settlement and release, Judge Hillman's order granting the motion may be overturned on appeal only if this court finds that he abused his discretion in doing so.  See In re Servisense.com, Inc., 382 F.3d 68, 71-72 (1st Cir. 2004).

Taking appellants' arguments in their logical order, there can be no question but that the Bankruptcy Court had jurisdiction to entertain the Trustee's motion.  By the authority granted by 28 U.S.C. § 1334(e), "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, *and of property of the estate*."  [Emphasis added].  The property or "assets" of the bankruptcy estate include "all legal and equitable interests of the debtor in property . . . ." 11 U.S.C. § 541(a)(1). Section 157(b)(1) of Title 28 further provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising

7

in a case under title 11 . . . and may enter appropriate orders and judgments . . . ." Core proceedings within the meaning of 28 U.S.C. § 157(b)(2) are "matters concerning the administration of the estate," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship . . . . " 28 U.S.C. § 157(b)(2)(A) and (O). Here, the Trustee's motion directly involved matters concerning the administration of the estate and the liquidation of assets and is therefore properly considered a core proceeding. The law is also clear that a fraudulent conveyance claim is property of the estate that with rare exception may only be prosecuted by the Trustee.[5] 11 U.S.C. § 541. See Nat'l Tax Credit Partners, L.P. v. Havlik, 20 F.3d 705, 708-709 (7th Cir. 1994) ("[T]he right to recoup a fraudulent transfer, which outside of bankruptcy may be invoked by a creditor, is property of the estate that only a trustee or debtor in possession may pursue once a bankruptcy is under way."); In re Pilavis, 233 B.R. at 3-4 (same). See also In re J.F.D. Enterprises, Inc., 223 B.R. 610, 621 (Bankr. D. Mass. 1998) (a cause of action seeking damages for harm to a corporation based on the prepetition conduct of its directors or managers becomes "property of the estate" upon the initiation of bankruptcy, and may be pursued only by a representative of the estate, whether the trustee or a debtor-in-possession); Feinman v. Lombardo, 214 B.R. 260, 265 (Bankr. D. Mass. 1997) (a bankruptcy trustee has exclusive standing to assert state law claims that

---

[5]The limited circumstance in which general creditors have the right to assert fraudulent transfer claims arises when an estate representative or debtor-in-possession refuses unjustifiably to do so. See In re Pilavis, 233 B.R. 1, 3-4 (Bankr. D. Mass. 1999)

could have been asserted by the debtor prior to the commencement of bankruptcy).  As the Trustee stated at the hearing, it would be a strange and illogical interpretation of the law that recognized on the one hand the exclusive right of the Trustee to prosecute a fraudulent transfer claim, while on the other denying him the power to settle or compromise that very same claim.  I agree.[6]

Appellants argue in the alternative that the Bankruptcy Court abused its discretion in approving a compromise "below the lowest point in the range of reasonableness."  See Healthco Int'l, 136 F.3d at 51.  "The approval of a compromise is within the sound discretion of the bankruptcy judge . . . and this court will not overturn a decision to approve a compromise absent a clear showing that the bankruptcy judge abused [his] discretion." Jeffrey v. Desmond, 70 F.3d 183, 185 (1st. Cir. 1995). Applying this standard "against the background understanding that '[c]ompromises are favored in bankruptcy,'" the First Circuit has articulated a four-part test to be applied by a  bankruptcy judge in determining whether to approve a compromise of a debtor's claim.

> "(i) [T]he probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise." The court's consideration of these factors should demonstrate whether the compromise

---

[6]Appellants' claims of successor and/or alter ego liability are derivative of the fraudulent transfer claim, and despite Judge Hillman's expressed hesitation on the subject, are more relevant to a theory of damages than they are to liability.  It must also be stressed that the Trustee took care to exclude the appellants' personal state law claims from the stipulation of settlement and release.

is fair and equitable, and whether the claim the debtor is giving up is outweighed by the advantage to the debtor's estate.

In re Servisense.com, Inc., 382 F.3d at 72, quoting Jeffrey, 70 F.3d at 85.  Judge Hillman's oral ruling makes clear that he understood and considered the relevant factors.  As Judge Hillman observed, assigning value to intellectual property like internet software is more often art than science.  This court is unable to say that Judge Hillman abused his discretion in accepting the judgment of the experienced Bankruptcy Trustee that $50,000 constituted fair consideration for the release.

ORDER

For the foregoing reasons, the Orders of the Bankruptcy Court are AFFIRMED.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE